## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| **DANNY R. TEAGLE and JESUS SALAZAR, JR., individually and on behalf of all others similarly situated,** | § § § § § | |
| **Plaintiffs,** | § § | |
| **v.** | § § | **No. 1:11-CV-1280-RWS-JSA** |
| **LEXISNEXIS SCREENING SOLUTIONS, INC., formerly known as CHOICEPOINT'S WORKPLACE SOLUTIONS, INC.,** | § § § § § | |
| **Defendant.** | § § | **Jury Trial Demanded** |

## PLAINTIFF'S MEMORANDUM OF LAW
## IN SUPPORT OF MOTION FOR PRELIMNARY APPROVAL
## OF CLASS ACTION SETTLEMENT AND RELATED ORDERS

### I.   INTRODUCTION AND RELIEF REQUESTED

Plaintiff moves for preliminary approval of the class action settlement agreement reached between Plaintiff and Defendant LexisNexis Screening Solutions, Inc. ("LexisNexis"). For the reasons set forth in this Memorandum and supporting documents, the proposed settlement agreement is fair, reasonable, and adequate, and serves the best interests of the Class Members.

Plaintiff therefore requests that the Court take the following steps in the settlement approval process: (1) grant preliminary approval of the settlement relief to the Classes and the fees and costs payment to Plaintiff's Counsel; (2) provisionally certify the proposed Settlement Classes and appoint Danny R. Teagle as the Representative of the Settlement Classes; (3) appoint the law firms of Caddell & Chapman and McRae Brooks Warner as Class Counsel; (4) approve the proposed notice plan and the forms of settlement notice and order provision of such notice; (5) appoint Tilghman & Co. as the Settlement Administrator to oversee the administration of the Settlement; and (6) schedule the Final Fairness Hearing and related dates as proposed by the Parties.

## II.    STATEMENT OF FACTS

### A.    Factual and Procedural Background

Defendant LexisNexis is a credit reporting agency ("CRA") that provides, as pertinent here, background reports to employers for use in their hiring process. (Dkt. No. 55 ¶ 11.) In the summer of 2010, Plaintiff Teagle applied for work at Igloo, an employer that purchased from LexisNexis a background report on him. (*Id.* ¶¶ 14, 16.) Igloo offered Plaintiff Teagle a job, but later rescinded that offer

based on information contained in the report Igloo purchased from LexisNexis. (*Id.* ¶ 16.)

Several days after LexisNexis provided Igloo with the report on Teagle and Igloo rescinded its offer of employment, Teagle received a letter from LexisNexis that contained the report and a summary of his FCRA rights. (*Id.* ¶ 18.) The LexisNexis report contained two entries of criminal history—neither of which were convictions of crimes—that predated the report by more than seven years, meaning the information should have been excluded from the report. (*Id.* ¶¶ 17, 60.) Neither LexisNexis nor Igloo provided Teagle with a copy of the LexisNexis report before the employer took the adverse employment action against him. (*Id.* ¶¶ 17–18.)

Teagle filed this lawsuit, acting as the sole Named Plaintiff, against LexisNexis and Igloo on April 20, 2011. (Dkt. No. 1.) Teagle alleged claims under the Fair Credit Reporting Act on behalf of three national Classes, two pertaining to claims against LexisNexis and one against Igloo. (*Id.* ¶¶ 2–4.) During the initial pendency of the case, Igloo was able to convince Teagle that he was the sole member of the Class against Igloo, so Teagle agreed to an individual settlement with Igloo and dismissed it as a Defendant. (*See* Dkt. No. 44.) During this same

time period, Plaintiff and LexisNexis agreed to extensions of time for LexisNexis to answer the Complaint and for Plaintiff to move for class certification, and they also negotiated and filed for Court approval their proposed discovery plan. (Dkt. Nos. 18, 29, and 28.)

Also while discussing the dismissal of his claims against Igloo, Plaintiff began discovery against LexisNexis, which resulted in the exchange of documents. (Ex. 1, April 8, 2013 Declaration of Craig C. Marchiando ("Marchiando Decl.") ¶ 4.) The Parties also negotiated, and the Court entered, an agreed protective order. (Dkt. Nos. 41, 53.)

Plaintiff also sought leave to amend his Complaint during this time period, to allege claims on behalf of a new Plaintiff, Jesus Salazar, Jr. (Dkt. No. 35.) LexisNexis opposed that request and Plaintiff responded, with the Court ultimately permitting the amendment. (Dkt. Nos. 40, 46, 54.) Although alleged to be a part of the same Classes as Plaintiff Teagle, Plaintiffs learned through discovery that Plaintiff Salazar did not fall into those Classes and so his claims were not appropriate for classwide resolution. (Ex. 1, Marchiando Decl. ¶ 5.) Salazar has therefore separately resolved, on an individual basis, his claims against LexisNexis for the inaccuracy of his report. (*Id.* ¶ 6.)

After several agreed deadline extensions and meet-and-confer discussions regarding discovery, LexisNexis produced—through four supplements—1,288 pages of documents. (*Id*. ¶ 7.) As the Parties sought to schedule depositions in anticipation of Plaintiff Teagle's Motion for Class Certification, they agreed to stipulate to many of the evidentiary points that would support that Motion. (*Id.* ¶ 8.) The discussions surrounding the evidentiary stipulation eventually lead to the Parties' settlement, which they present here for the Court's consideration. (*Id.* ¶ 9.)

After arms'-length negotiations produced a tentative settlement, the Parties agreed upon an informal exchange of information that would support both the settlement terms and class sizes. (*Id*. ¶ 10.) LexisNexis provided this information in the form of supplemental discovery responses, which establish, among other key points, that the proposed Notice Settlement Class includes up to approximately 18,000 individuals, and the proposed Obsolete Information Settlement Class includes up to approximately 700 individuals. (Ex. 2, LexisNexis' Supplemental Response to Plaintiffs' Discovery Requests ("Suppl. Responses") ¶¶ 18, 28; Ex. 7, Settlement Agmt. § 3.4.2.) This information also supports the limitations on the definitions of the Classes, as well as establishing—as set forth below—the typicality, commonality, predominance, and superiority requirements of Rule 23.

**B.      Counsel Thoroughly Investigated the Proposed Classes' Claims**

Over the course of several weeks before the filing of Plaintiff's Complaint, his Counsel investigated potential claims, researched legal issues, and prepared the Complaint. (Ex. 1, Marchiando Decl. ¶ 11.) As the case and settlement talks unfolded, Plaintiff's Counsel was particularly focused on establishing the claimed Class sizes as well as LexisNexis' procedures for meeting its FCRA requirements when selling consumer reports for use during the hiring process. (*Id.* ¶ 12.) LexisNexis produced merits-related discovery, which established the procedures it ordinarily followed in providing the required notices to individuals whose consumer reports were sold for and used as part of the hiring process as well as the methods it uses to cull information that must be excluded from such reports because it is more than seven years old. (*Id.* ¶ 13.) Plaintiff's Counsel reviewed every page of documentation, and continued with discussions with LexisNexis to refine the discovery to focus on information relevant to Plaintiff's claims and to obtain additional information and discovery materials. (*Id.* ¶ 14.) Importantly, the settlement discussions and discovery revealed that the Classes' claims were the result of a programming omission by LexisNexis when it changed a reporting process and of errors made by state agencies that provided information to

LexisNexis, which it discovered during its investigation of the facts of this lawsuit. (*Id.* ¶ 15.)

As it should, the discovery process ultimately assisted the Parties in reaching their settlement, as it both pinpointed the processes that support Plaintiff's claims and allowed the Parties to fully grasp the breadth of the claims applied across the Classes. (*Id.* ¶ 16.) This discovery process proved invaluable in allowing Counsel for both sides to assess the strengths and weaknesses of the case going forward, and also aided in finally agreeing that the Proposed Settlement is fair, reasonable, and adequate under the circumstances. (*Id.* ¶ 17.)

## C.    The Proposed Settlement

The terms of the Parties' agreement are contained within the Settlement Agreement, attached as Exhibit 1 to the Marchiando Declaration. The Settlement terms are summarized below.

### 1.    The Settlement Classes

#### a.    The Notice Settlement Class

The Notice Settlement Class, the definition of which has been refined through the discovery process and settlement discussions, includes:

> All persons residing in the United States of America (including its territories and Puerto Rico) (a) who were the subject of a LexisNexis consumer report on the LexisNexis Business Edition platform that was furnished to a third party other than Wal-Mart or Target (b) between April 20, 2006, and the Effective Date (c) that contained an adverse public record (d) that was furnished to the third party for purposes of an employment decision, and (e) to whom the written notice mailed by LexisNexis that it was furnishing the report was delayed for technical reasons relating to the provision of Historical Records and Non-Historical Records in the same report.

(Ex. 7, Settlement Agmt. § 3.1.1.) Plaintiff and LexisNexis agree that this Class consists of up to approximately 18,000 individuals, who can be readily identified from LexisNexis' records. (Ex. 1, Marchiando Decl. ¶ 18; Ex. 2, Suppl. Responses ¶ 18.)

### b.    The Obsolete Information Settlement Class

The Obsolete Information Settlement Class, the definition of which has also been refined through the discovery process and settlement discussions, includes:

> All persons residing in the United States of America (including its territories and Puerto Rico) (a) who were the subject of a LexisNexis employment background screening report (b) that contained at least one record of any type of criminal history information (other than a criminal conviction) that predates the report by more than seven years as the result of dismissals being reported to LexisNexis in the field reserved for sentencing information, and not in the field to be used for dispositions; (c) that was furnished for an employment purpose for a position for which the annual salary is less than $75,000; and (d)

8

within two years preceding the filing of this action and during its
pendency.

(Ex. 7, Settlement Agmt. § 3.1.2.) Plaintiff and LexisNexis agree that this Class

consists of up to approximately 700 individuals, who can be readily identified from

LexisNexis' records. (Ex. 1, Marchiando Decl. ¶ 19; Ex. 2, Suppl. Responses ¶ 28.)

### 2.      Monetary Relief for Class Members

In exchange for a release of Class Members' claims against LexisNexis,[1]

and subject to the Court's approval, LexisNexis has agreed to make a cash

payment to each Class Member without them having to take any action to receive

the payment. (Ex. 7, Settlement Agmt. § 5.2.) After final approval of the

Settlement, LexisNexis will create a fund from which these payments are to be

made, by the Settlement Administrator, in the following amounts:

- Notice Class:                    $50

- Obsolete Information Class:    $150

(*Id.* §§ 5.1.3, 5.2.) As part of the preparation of the mailed notice (described more

fully below), the Settlement Administrator will perform a database search to

update Class Members' addresses. (*Id.* § 3.3.3.) By taking that step, the Parties will

---

[1] Class Members are expressly not releasing claims against LexisNexis under 15 U.S.C. §§
1861e or 1681i, which generally encompass duties relating to the accuracy of information and
CRAs' processes for reinvestigating disputes. (*See* Settlement Agmt. §§ 4.1, 4.2.)

use the best possible method by which to ensure that settlement checks are indeed delivered to Class Members. Funds remaining from checks that cannot be delivered to Class Members or have not been cashed within 7.5 months will first be used to offset the cost of notice and administration, and then be given to charity, through a *cy pres* proposal approved by the Court.  (*Id.* § 5.3.)

### 3.    Notice to the Classes

Subject to Court approval, the Settlement Administrator will (1) arrange for the mailing of the Class Notices by first-class mail, (2) update addresses in the class databases, (3) collect exclusion requests and maintain a list of those Class Members who choose to opt out of the Settlement, and (4) monitor the processing of payments through the settlement accounts that the administrator establishes for purposes of placing and disbursing the settlement funds.  (*Id.* §§ 3.3, 3.4.1, 5.1.3, 5.2.)

Following preliminary approval of the Settlement, the Settlement Administrator will send each Class Member, by First Class Mail, a Summary Notice letter specific to each Defendant outlining the Settlement terms and relief, and directing Class Members to contact the Settlement Administrator or Plaintiff's Counsel with any concerns about the Settlement. (Ex. 1, Marchiando Decl. ¶ 20.)

Examples of these Notice Letters are attached hereto as Exhibits 3 and 4. (Exs. 3; 4.)

### 4. Settlement Administration

Due to the national scope and population size of the Classes, the Parties have agreed that it is appropriate to hire a Settlement Administrator to attend to the details of monitoring the notice program, exclusion requests, and payment processing. (Ex. 1, Marchiando Decl. ¶ 21; Ex. 7, Settlement Agmt. § 3.3, 3.4.1, 5.1.3, 5.2.) The costs of notice and administration will be paid separately by LexisNexis, and this expense will not reduce the cash recovery to Class Members. (Ex. 7, Settlement Agmt. §§ 5.1.2, 5.2.)[2]

### 5. Class Representative Service Award

Also subject to Court approval, the Settlement Agreement allows that Class Representative Danny R. Teagle be paid a service award of $5,000 in recognition of his effort on behalf of the Classes. (*Id*. § 5.1.1.) This service award is in addition to the relief to which Teagle will be entitled as a member of the Settlement Classes

---

[2] The Parties have, however, negotiated a term that permits repayment of LexisNexis' costs associated only with notice and administration from funds that are undeliverable to or unclaimed by Class Members. (Ex. 7, Settlement Agmt. § 5.2.)

under the terms of the Settlement Agreement. This award will compensate Teagle for the time, effort, and risk he undertook in prosecuting this case.

### 6.      Attorneys' Fees and Costs

Subject to Court approval, the Settlement Agreement provides for a payment to Class Counsel of up to $350,000, which includes Counsel's reasonable and necessary attorneys' fees, expenses, and costs. (*Id*. § 5.1.2.) As discussed below, this amount represents approximately 26 percent of the value of the total Class recoveries, which Plaintiff's Counsel estimates is equivalent to its accumulated lodestar and expenses incurred.[3] (Ex. 1, Marchiando Decl. ¶ 22.) This amount was negotiated at arms'-length, after the Parties had reached the settlement agreement. (*Id*. ¶ 23.) Further, this amount is in addition to the $50 and $150 payments to Class Members, and will not reduce the cash recoveries of Class Members. The Defendant does not oppose Class Counsel's application for attorneys' fees, expenses, and costs up to this amount. (Ex. 7, Settlement Agmt. § 5.1.2.) Class Counsel will submit an application for attorneys' fees with Plaintiff's Motion for Final Approval.

---

[3] Plaintiff's Counsel will fully discuss attorneys' fees and expenses in their formal fee application.

**7.     Release of Claims**

**a.     Notice Settlement Class**

In exchange for the benefits allowed under the Settlement, Notice Settlement Class Members who do not opt out will release "any claim, right, demand, charge, complaint, action, cause of action, obligation, or liability for any type of equitable relief and statutory or punitive damages predicated on equitable claims and for actual or statutory damages, punitive damages, restitution or other monetary relief of any and every kind, including, without limitation, those based on any federal, state, or local law, statute, regulation, or common law, including all claims for declaratory or injunctive relief, whether known or unknown, suspected or unsuspected, under the law of any jurisdiction, which the Class Representative or any Notice Settlement Class Member ever had, now has or may have in the future resulting from, arising out of or in any way, directly or indirectly, connected with (a) any act, omission, event, incident, matter, dispute, or injury arising from the possible failure of LNSSI to provide timely the required notices pursuant to 15 U.S.C. § 1681k(a)(1); (b) any acts or omissions that were raised or could have been raised in this Action by any Notice Settlement Class Member, and (c) any event, matter, dispute or thing that in whole or in part, directly or indirectly, relates to or

arises out of said events specified in (a) or (b) above." (Ex. 7, Settlement Agmt. § 4.1.)

### b.    Obsolete Information Settlement Class

Likewise, in exchange for the benefits allowed under the Settlement, Obsolete Information Settlement Class Members who do not opt out will release "any claim, right, demand, charge, complaint, action, cause of action, obligation, or liability for any type of equitable relief and statutory or punitive damages predicated on equitable claims and for actual or statutory damages, punitive damages, restitution or other monetary relief of any and every kind, including, without limitation, those based on any federal, state, or local law, statute, regulation, or common law, whether known or unknown, suspected or unsuspected, under the law of any jurisdiction, which Class Representative or any Obsolete Information Class Member ever had, now has, or may have in the future resulting from, arising out of or in any way, directly or indirectly, connected with (a) the possible inclusion in consumer reports of criminal information, other than records of convictions of crimes, that predates the report by more than seven years; (b) any acts or omissions that were raised or could have been raised in this Action, and (c) any event, matter, dispute or thing that in whole or in part, directly or

indirectly, relates to or arises out of said events specified in (a) or (b) above." (Ex. 7, Settlement Agmt. § 4.2.)

## III.   ARGUMENT AND AUTHORITIES

### A.   Standards for Approval of Class Action Settlements

Federal courts strongly favor settlements, especially in class actions and other complex matters where the costs, delays, and risks of continued litigation might overwhelm any potential benefit the class could hope to obtain. *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984) (noting that "our judgment is informed by the strong judicial policy favoring settlement"); *Assoc. for Disabled Americans, Inc. v. Amoco Oil*, 211 F.R.D. 457, 466 (S.D. Fla. 2002) (citing *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977)) ("There is an overriding public interest in favor of settlement, particularly in class actions that have the well-deserved reputation as being most complex."); *see also* 4 NEWBERG ON CLASS ACTIONS ("NEWBERG") § 11.41 (4th ed. 2002) (citing cases). The traditional means for handling claims like those at issue here—individual litigation—would unduly tax the court system, require a massive expenditure of public and private resources, and, given the relatively small value of the claims of the individual Settlement Class Members, be impracticable. Thus, the proposed Settlement is the best vehicle

for Settlement Class Members to receive the relief to which they are entitled in a prompt and efficient manner.

The Manual for Complex Litigation describes a three-step procedure for approval of class action settlements:

(1)  Preliminary approval of the proposed settlement at an informal hearing;

(2)  Dissemination of mailed and/or published notice of the settlement to all affected class members; and

(3)  A "formal fairness hearing" or final settlement approval hearing, at which class members may be heard regarding the settlement, and at which evidence and argument concerning the fairness, adequacy, and reasonableness of the settlement may be presented.

MANUAL FOR COMPLEX LITIGATION (FOURTH) § 21.632 (2008) ("MANUAL"). This procedure, used by courts in this Circuit and endorsed by class action commentator Professor Newberg, safeguards class members' due process rights and enables the Court to fulfill its role as the guardian of class interests.  4 NEWBERG § 11.25.

In addition to making a preliminary showing of reasonableness, Plaintiff must also meet the requirements of Federal Rule of Civil Procedure 23 to obtain preliminary approval. *In re Checking Account Overdraft Litig.*, 275 F.R.D. 654,

659 (S.D. Fla. 2011) (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997)). Rule 23(a) grants class action status to cases in which:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

FED. R. CIV. P. 23(a). These requirements are more commonly known as numerosity, commonality, typicality, and adequacy of representation. *See In re Checking Account Overdraft Litig.*, 275 F.R.D. at 659. An action that satisfies these requirements must, in addition, meet one of the prerequisites of Rule 23(b) to be maintained as a class action. *Id.* Here, Plaintiff seeks certification under Rule 23(b)(3), which allows certification of a class action if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." FED. R. CIV. P. 23(b)(3).

With this Motion, Plaintiff requests that the Court take the first step in the settlement approval process by granting preliminary approval of the proposed

Settlement. The purpose of preliminary evaluation of proposed class action settlements is to determine whether the settlement is within the "range of reasonableness" and, therefore, whether notice to the class of the settlement's terms and the scheduling of a formal fairness hearing is worthwhile. MANUAL § 21.632. The decision to approve or reject a proposed settlement is committed to the Court's sound discretion. *See Bennett*, 737 F.2d at 986 ("Determining the fairness of the settlement is left to the sound discretion of the trial court and we will not overturn the court's decision absent a clear showing of abuse of that discretion."); *see also In re Sunbeam Secs. Litig.*, 176 F. Supp. 2d 1323, 1329 (S.D. Fla. 2001) (holding that "a district court is vested with broad discretion" in making the settlement approval determination). "Preliminary approval is appropriate where the proposed settlement is the result of the parties' good faith negotiations, there are no obvious deficiencies, and the settlement falls within the range of reason." *In re Checking Account*, 275 F.R.D. at 661.

The Court's grant of preliminary approval will allow all Settlement Class Members to receive notice of the proposed Settlement's terms and the date and time of the "formal fairness hearing," or final settlement approval hearing, at which Settlement Class Members may be heard regarding the Settlement, and at

which further evidence and argument concerning the fairness, adequacy, and reasonableness of the settlement may be presented. *See* MANUAL §§ 13.14, 21.632. While the final fairness hearing is a crucial step in the settlement approval process, neither formal notice nor a hearing is required at the preliminary approval stage; the Court may grant such relief upon an informal application by the settling parties, and may conduct any necessary hearing in court or in chambers, at the Court's discretion. *See id.* § 13.14. The parties do not request a hearing on the present Motion.

Here, as set forth below, the proposed Settlement falls well within the range of possible approval and thus satisfies the requirement for preliminary approval. It is non-collusive, fair, and reasonable. The Settlement will provide a genuine benefit to Settlement Class Members by providing them with a portion of the available statutory relief while eliminating the substantial risks and long delays of litigation.

## B.      The Settlement Here Satisfies the Criteria for Approval

The Court may approve a class action settlement if, after holding a hearing, it concludes that the settlement is "fair, reasonable, and adequate." FED. R. CIV. P. 23(e)(2). "At the preliminary approval stage, the Court's task is to evaluate

whether the Settlement is within the 'range of reasonableness.'" *In re Checking Account*, 275 F.R.D. at 661. "Settlement negotiations that involve arm's length, informed bargaining with the aid of experienced counsel support a preliminary finding of fairness." *Id.* In making this fairness determination, courts "'do not decide the merits of the case or resolve unsettled legal questions.'" *Mashburn v. Nat'l Healthcare, Inc.*, 684 F. Supp. 660, 670 (M.D. Ala. 1988) (quoting *Carson v. Am. Brands, Inc.*, 450 U.S. 79, 88 n.14 (1981)). The fairness determination involves several factors, including: "(1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate, and reasonable; (4) the complexity, expense, and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved." *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984). Plaintiff addresses these factors below.

### 1. Plaintiff has a strong case, but agrees to settle for the sake of obtaining certain relief now

As set forth in Plaintiff's Complaint, he alleges that LexisNexis provided a report to Igloo for employment purposes, but then failed to follow the FCRA's

requirements of timely notice and omitting of older information from reports it sells. (Dkt. No. 55 ¶¶ 16–18.) During discovery and settlement discussions with LexisNexis, Plaintiff learned that during October 2008, LexisNexis changed the way in which it made certain criminal-history information available to users like Igloo. (Ex. 2, Suppl. Responses ¶¶ 10–12.) As a result of that change, notice letters required by 15 U.S.C. § 1681k(a)(1)—which must be sent "at the time" derogatory-public-record information is made available to users for employment purposes—were, in a relatively small percentage of cases, inadvertently sent some time after reports were made available to LexisNexis' customers. (*Id.* ¶ 12.) LexisNexis first learned of this programming error during its investigation of the facts of this lawsuit. (*Id.* ¶ 17.)

Similarly, during the investigation of the facts underlying this lawsuit, LexisNexis determined that two Texas counties—one of which reported criminal history information regarding Plaintiff Teagle that was not a conviction but was more than seven years old—mistakenly reported dispositions of criminal cases in a field other than the field reserved for disposition information. (*Id.* ¶¶ 22–27.) Thus, when LexisNexis searched the criminal histories for individuals reported by these counties, it would not detect that this item of criminal history was more than seven

years old and therefore should be excluded from Teagle's report. (*Id.* ¶¶ 22–27.) Since the filing of this lawsuit and discovery of these programming issues, LexisNexis has changed its systems to timely send the notices required by Section 1681k and to take other steps to properly identify information that should be excluded from consumer reports because it is older than seven years. (*Id.* ¶¶ 17, 27.)

Knowing these facts about LexisNexis' former processes for creating and selling consumer reports for employment purposes, however, does not mean that Plaintiff and the Class will necessarily prevail on their claims. Because the Class claims here seek statutory rather than actual damages, the Class must show that Defendants willfully violated the FCRA. *See* 15 U.S.C. § 1681n; (*see also* Dkt. No. 55 ¶¶ 57, 61.) In the FCRA context, willfulness embraces not only knowing violations, but reckless ones as well. *Safeco Inc. Co. of Am. v. Burr*, 551 U.S. 47, 57–58 (2007). Should Plaintiff carry his burden of showing willfulness, Defendant is subject to statutory damages of between $100 and $1,000 per violation, as well as punitive damages "as the court may allow."  15 U.S.C. § 1681n(a). Plaintiff is also entitled to attorneys' fees and costs of suit if he successfully proves willfulness. *Id.*

Courts generally view willfulness as a jury question, making it ill-suited for determination on summary judgment. *See Brim v. Midland Credit Mgmt.*, 795 F. Supp. 2d 1255, 1259 (N.D. Ala. 2011) (holding that court would not "substitute its own finding of credibility for that of the jury" on willfulness under the FCRA); *Barron v. TransUnion Corp.*, 82 F. Supp. 2d 1288, 1299 (M.D. Ala. 2000) (denying motion for summary judgment on willfulness issue, finding that "a question of fact exists as to whether Defendant willfully failed to investigate the dispute"). Thus, should he pursue his claims rather than settle them, this authority shows Plaintiff has a good chance that those claims would survive summary judgment and reach a jury.

On the other hand, the revelation in discovery that mere programming oversights and errors by state agencies in reporting information, rather than conscious decisions by LexisNexis, caused notice letters to be mailed late and obsolete information to be included in Teagle's report cuts against Plaintiff's position that LexisNexis was willful in its violations. (*See* Ex. 1, Marchiando Decl. ¶ 24.) While willfulness does include FCRA violations that are reckless, *Safeco*, 551 U.S. at 57–58, Plaintiff believes it could be difficult to convince the Court or a jury that computer errors and errors made by state agencies meet this definition.

23

Though Plaintiff is hopeful that he could still prove his willfulness claims with additional discovery, he believes the better course is to settle them because there is a real danger that he will fail to prove willfulness and end up with nothing for himself and the Classes. This factor favors granting preliminary approval of the Settlement.

## 2. The amount offered in settlement is outstanding under the circumstances, and favors settlement

As set forth in the Settlement Agreement, members of the Notice Class will receive $50, while members of the Obsolete Information Class will be paid $150 each, and those individuals in both Classes will receive two payments. (Ex. 7, Settlement Agmt. § 5.2.) The Settlement therefore benefits individuals with difficult-to-prove (if they can be proven at all) willfulness claims, and the Settlement gives $50 or $150 of relief to those Class Members despite this potential shortcoming.[4] (*See id.*) If some of these individuals took their claims to trial, they would likely lose, but the Settlement provides them relief anyway.

The amounts that members of the Settlement Classes will receive reflect these potential difficulties, and further support the conclusion that the settlement is

---

[4] Class Members with genuine claims of inaccuracy or regarding LexisNexis' reinvestigation process do not give up those claims in exchange for monetary relief. (*See id.* §§ 4.1, 4.2.)

fair. Members of the Notice Class receive $50, which is near the statutory minimum of damages for a willful violation, 15 U.S.C. § 1681n(a), even though it will likely be difficult to prove willfulness because the alleged violation resulted from a programming oversight at LexisNexis. Simply put, these individuals will receive a payment for a programming oversight that caused their notice letter to simply be mailed late, as opposed to the letter not being mailed at all. Given, then, that LexisNexis has a strong defense that it did not willfully violate the FCRA because of the programming error, a $50 cash payment—which Class Members may spend as they choose—is a fine result because it provides Class Members with certain and genuine relief.

Members of the Obsolete Information Class will receive a larger payment— $150—also without regard to their being able to show the alleged violation occurred as a result of willful conduct by LexisNexis. This amount is more than the statutory minimum, 15 U.S.C. § 1681n(a), and is a larger sum because the obsolete information that was included in reports for this Class was criminal history, which has greater potential for harm to job-seeking consumers than the late mailing of letters for members of the Notice Class. Again, in light of the difficulties Plaintiff foresees in proving that LexisNexis willfully violated the FCRA, a cash payment

for members of the Obsolete Information Class is an excellent outcome. This is especially the case given the involvement of state agencies in these circumstances, and in light of the fact that the Class claims involve the reporting of accurate, albeit old, information.

In addition, the Settlement is excellent for Class Members because they need take no action to obtain a payment. (*Id*. § 5.2.) Thus, there is nearly no chance that a Class Member whose address can be verified will fail to receive his or her relief under the Settlement. Checks will be mailed to addresses that LexisNexis has in its own records, so Class Members need do nothing other than check their mail to receive their settlement funds. (*Id.* § 3.3.3.) No settlement structure could be easier from the Classes' perspective, and there is simply no better way to ensure that Class Members receive their money through minimal effort on their part.

Finally, receiving $50 to $150 for LexisNexis' conduct is of great value to Class Members because the relief comes without regard to actual damages. In instances, for example, where individuals were disqualified from working at Igloo because of information accurately reported but for whom LexisNexis failed to give proper FCRA notice, they will be afforded relief under the Settlement. Those individuals, however, likely suffered no genuine damages because they were

denied employment for which they were not qualified. Thus, the fact that a Class Member cannot show actual damages is not a bar to recovery under the Settlement. This is another superior point for Class Members, since the Settlement forgoes Class Members' need to show that they were actually injured as a prerequisite to recovery. (*See id.* § 5.2.) For all of these reasons, the result obtained on behalf of the Classes favors settlement.

### 3.   The proposed Settlement is reasonable in view of the possibility that class action status might not be attained

While Plaintiff is also confident that he would prevail on his motion to certify the class, there is still a very realistic possibility that his motion would fail. Certification of classes under the FCRA is by no means guaranteed, as defendants are often able to raise sufficient arguments to defeat certification requests. *See, e.g.*, *Campos v. ChoicePoint, Inc.*, 237 F.R.D. 478, 490 (N.D. Ga. 2006) (granting in part and denying in part motion to certify FCRA classes). From the supplemental discovery responses of LexisNexis, the systems used to create reports on all Class Members were largely computerized and automatic, meaning LexisNexis treated all Class Members identically. (Ex. 1, Marchiando Decl. ¶ 25; Ex. 2, Suppl. Responses ¶¶ 3–12, 22–26.) Class Member claims will therefore rise

or fall together. Since Plaintiff is not yet aware of the challenges to class certification the Defendant would mount, however, he cannot state with complete confidence that class certification is an utter certainty. The Settlement avoids this risk by eliminating a contested motion to certify the Classes in favor of providing immediate relief where there is a possibility that such relief could be lost with an unfavorable ruling on class certification. Again, this factor favors preliminarily approving the Settlement.

### 4.   The complexity, expense, and likely duration of further litigation favor granting preliminary approval of the Settlement

Aside from problems presented by summary judgment and class certification, there are also other milestones that also remain in this litigation, namely, an extensive discovery process to support both class certification and the merits of Plaintiff's claims, the retention of experts and motion practice surrounding the fitness of their opinions, and other potentially dispositive challenges Defendant might bring. Of course, the possibility of appeals for any losses on these issues by either side threatens to further prolong the litigation. This factor also favors the Settlement. *See In re Motorsports Merchandise Antitrust Litig.*, 112 F. Supp. 2d 1329, 1333 (N.D. Ga. 2000) (holding that class-action

settlements "conserve judicial resources by avoiding the expense of a complicated and protracted litigation process").

### 5. The parties have conducted ample discovery to support the Settlement

As set forth above, LexisNexis has provided more than 1,200 pages of documents and discovery responses confirming Class membership and specifically addressing the programming oversights that LexisNexis discovered and corrected as a result of this lawsuit. (Ex. 1, Marchiando Decl. ¶ 26.) Any additional discovery would not yield larger Class populations or better results for Class Members. (*Id.* ¶ 27.)This discovery confirms that the Notice Class numbers up to approximately 18,000 individuals, and the Obsolete Information Class numbers up to approximately 700 individuals. (*Id.* ¶¶ 18–19; Ex. 2, Suppl. Responses ¶¶ 18, 28.) The documents and information provided further supports Plaintiff's theory that in the cases of the Class Members, Defendant improperly complied with the FCRA's notice requirements and reporting restrictions during the relevant time period. But, on the other hand, this same information provides serious doubts as to whether Plaintiff could prove his and the Classes' entitlement to statutory damages for willful violations. (Ex. 1, Marchiando Decl. ¶ 28.) Taken together, this

information properly establishes the Class population and the viability of Plaintiff's willfulness claims, supporting the conclusion that the Settlement is reasonable and adequate for those Class Members.

### 6. Counsel views the Settlement as excellent and recommends it be preliminarily approved[5]

Michael Caddell, proposed Lead Counsel for the Class, is a nationally recognized class action practitioner who has acted in a lead role in dozens of nationwide class actions involving consumer protection and the FCRA. (Ex. 5, Declaration of Michael A. Caddell ("Caddell Decl.") ¶¶ 7–10.) As lead counsel, Mr. Caddell has been an integral part of many settlements, whether extensively litigated and appealed or agreed-upon early in the process. (*Id.* ¶¶ 7–12.) In his estimation, this Settlement is an excellent result because it provides Class Members with genuine relief as quickly as possible. (*Id.* ¶¶ 23–28.)

Courts recognize that settlements providing Class Members with cash are preferable to those offering other, nonmonetary forms of relief. *See States of N.Y. & Md. v. Nintendo of Am., Inc.*, 775 F. Supp. 676, 681 (S.D.N.Y. 1991) (remarking, during the evaluation of a settlement the provided consumers with a

---

[5] Plaintiff does not address the fifth factor—Class Member reaction to the settlement—because the Class has yet to receive notice and Class Members therefore have not tendered any reactions. Plaintiff will address this aspect of the Settlement at final approval.

coupon for a discounted game cartridge, that "[c]onsumers obviously would prefer a check or cash"); *see also* FED. R. CIV. P. 23 advisory committee's note ("Settlements involving nonmonetary provisions for class members also deserve careful scrutiny to ensure that these provisions have actual value to the class."). This Settlement falls precisely in line with this approach, as it provides Class Members with immediate, genuine relief that they are free to do with what they wish. (Ex. 5, Caddell Decl. ¶ 23.) A cash award is a far cry from, and is certainly more desirable than, coupon or voucher settlements that require a class member to continue its relationship with the defendant. *Cf. Figueroa v. Sharper Image Corp.*, 517 F. Supp. 2d 1292, 1329 (S. D. Fla. 2007) (refusing to approve coupon settlement as fair, adequate, or reasonable).

The Settlement also eliminates any risk that Class Members may lose on summary judgment, class certification, or at trial by paying them a sum certain now. (Ex. 5, Caddell Decl. ¶¶ 23–26.) Those sums, $50 or $150, are approximately the minimum amount of statutory damages that Plaintiff could obtain with a jury verdict. *See* 15 U.S.C. § 1681n(a)(1)(A). The Settlement cuts out all uncertainty and gives Class Members a portion of the statutory recovery without requiring that they even prove their claim is meritorious or take any action to receive their

payment. (Ex. 5, Caddell Decl. ¶¶ 23–26.) The Settlement provides a cash payment in exchange for a release of claims that are of limited (or, perhaps no) value, and therefore provides an excellent result for the Classes. (*Id.* ¶ 28.) The Court should grant preliminary approval to the Settlement.

## C.   This Case Also Satisfies the Rule 23 Requisites, Making Preliminary Certification Appropriate

### 1.   The Rule 23(a) requirements are met here

#### a.   The Class is sufficiently numerous that joinder is impracticable

There is no hard-and-fast rule regarding the minimum number of individuals a class must contain to satisfy the numerosity requirement. Rather, "practicability of joinder depends on many factors, including, for example, the size of the class, ease of identifying its numbers and determining their addresses, facility on making service on them if joined and their geographic dispersion." *Kilgo v. Bowman Transp., Inc.*, 789 F.2d 859, 878 (11th Cir. 1986).  This case meets the numerosity requirement, because joinder of all Class Members is not practical here.

As explained above, the Parties have identified from LexisNexis' records approximately 18,000 members of the Notice Class and approximately 700 members of the Obsolete Information Class, and those individuals are spread

across the United States. These numbers, combined with the geographic disbursement of the Classes, weigh in favor of a conclusion that numerosity is met. *See Kilgo*, 789 F.2d at 878 (holding that numerosity requirement was met where plaintiffs had identified 31 individual class members); *see also McCluskey v. Trustees of Red Dot Corp. Employee Stock Ownership Plan & Trust*, 268 F.R.D. 670, 673–74 (W.D. Wash. 2010) (finding numerosity met where class numbered 27, and collecting cases that found numerosity in classes numbering 20, 7, 35, 17, 18, 16, and 13).

> **b.** **There are common issues of law and fact that favor class treatment**

The test for commonality in questions of law and fact is qualitative as opposed to quantitative, meaning that one significant issue common to the class may be sufficient to warrant certification. *Williams v. Mohawk Indus., Inc.*, 568 F.3d 1350, 1355 (11th Cir. 2009) (holding that "'commonality requires that there be at least one issue whose resolution will affect all or a significant number of the putative class members'"); *see In re Checking Account*, 275 F.R.D. at 659 (holding that commonality was satisfied where liability depended on "class-wide policies and practices"). These requirements should be given a "liberal construction."

*Freeman v. Motor Convoy, Inc.*, 409 F. Supp. 1100, 1113 (N.D. Ga. 1976) (explaining that "a broad definition of commonality of interests and typicality of claims is desirable"). Here, without class certification and settlement, each individual Class Member would be required to litigate a long list of common issues of law and fact, all relating to Defendant's alleged common course of conduct involving its reporting processes. And, of course, since a key aspect of Plaintiff's claims is a lack of proper notice by LexisNexis (*see* Dkt. No. 55 ¶¶ 18, 56–58), some Class Members are likely unaware that their claims even exist.

Commonality is easily satisfied here based on common questions, including: (1) whether LexisNexis provides notice to consumers at the time it provides reports containing adverse information to employers; (2) whether LexisNexis has a system in place to remove information from consumer reports that is too old under the FCRA; (3) whether LexisNexis willfully adopted these systems; and (4) whether LexisNexis is liable for damages, and the amount of those damages. Because Plaintiff has identified numerous questions of law and fact common to all members of the Classes, Rule 23(a)(2)'s commonality requirement is fully satisfied. FED. R. CIV. P. 23(a)(2); *Williams*, 568 F.3d at 1355.

### c.   The Named Plaintiff's claims are typical of those of the Classes

Representative claims are "typical" if there is "a nexus between the class representative's claims or defenses and the common questions of fact or law which unite the class." *Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984). Typicality, however, does not require "identical claims or defenses." *Id.* Rather, "a factual variation will not render a class representative's claim atypical unless the factual position of the representative markedly differs from that of the other members of the class." *Id.*; *see also In re Checking Account*, 275 F.R.D. at 660 (finding typicality satisfied where named plaintiff's claims concerned same policies and practices, arose from the same legal theories, and alleged the same types of harm and entitlement to relief).

Here, Plaintiff has precisely the same claims as members of the Settlement Classes, and must also satisfy the same elements of each of those claims, along with other Settlement Class Members. Supported by identical legal theories, Plaintiff and all Class Members share claims based on the same course of conduct—Defendant's failure to abide by FCRA strictures in providing notice to consumers and creating reports for employment purposes. Plaintiff and all

Settlement Class Members have been injured in the same manner by this conduct, and compensation for these injuries is determined by a single damages scheme without regard to actual harm. Plaintiff has asserted claims that are typical of the other Class Members' claims in that Defendant's failure to provide proper notice to consumers and exclude stale information violated the FCRA. Since the injuries and remedies of the Named Plaintiff and Class Members are the same, typicality is satisfied. *Kornberg*, 741 F.2d at 1337.

> **d.    The Named Plaintiff and his Counsel adequately represent the proposed Class**

The adequacy of representation requirement is satisfied if: (1) Plaintiff is represented by qualified and competent counsel; (2) Plaintiff's interests do not conflict with the interests of the proposed Class Members; and (3) Plaintiff has sufficient personal integrity to fulfill the role of class representative. *See Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718, 726 (11th Cir. 1987); *see also In re Checking Account*, 275 F.R.D. at 660 (finding adequacy requirement satisfied where plaintiffs had retained competent counsel and had vigorously represented the class members' interests). Plaintiff and his Counsel satisfy the adequacy requirement here.

First, Plaintiff's claims are co-extensive with those of the Settlement Classes, and Plaintiff seeks the identical relief that would be sought by all members of the proposed Classes. There is simply no conflict between Plaintiff's claims and those of the proposed Settlement Classes. The Named Plaintiff has agreed to assume the responsibility of representing the Settlement Classes, including responding to discovery requests, testifying at a deposition or trial, and diligently pursuing this action in cooperation with this counsel. Plaintiff has taken his obligations to the Settlement Class seriously. (Ex. 6, April 2, 2013 Declaration of Danny R. Teagle ¶¶ 7–12.) Nothing more is required.

Second, proposed Class Counsel has extensive experience and expertise in prosecuting complex class actions, including consumer and FCRA actions. (*See* Ex. 5, Caddell Decl. ¶¶ 7–10.) In pursuing this litigation, Plaintiff has advanced and will continue to advance and fully protect the common interests of all members of the Classes.  Accordingly, Rule 23(a)(4) is satisfied.

## 2. The Proposed Settlement meets the predominance and superiority requirements of Rule 23(b)(3)

The proposed Settlement Classes are ideally suited for certification under Rule 23(b)(3) because questions common to the Settlement Class members

predominate over questions affecting only individual members, and the class action device provides the best method for the fair and efficient resolution of the Settlement Class members' claims against Defendants. When addressing the propriety of Settlement Class certification, courts take into account the fact that a trial will be unnecessary and that manageability, therefore, is not an issue. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997).

### a.  Common questions predominate, making class treatment appropriate

Common issues predominate where these issues "ha[ve] a direct impact on every class member's effort to establish liability that is more substantial than the impact of individualized issues in resolving the claim or claims of each class member." *Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc.*, 601 F.3d 1159, 1170 (11th Cir. 2010). Even where some issues, such as calculating damages, may be individualized, common questions predominate when liability can be determined on a classwide basis. *Allapattah Services, Inc. v. Exxon Corp.*, 333 F.3d 1248, 1261 (11th Cir. 2003).

Liability here depends on classwide issues, which satisfies the predominance requirement. The same common questions relevant to the Rule 23(a)(2) analysis

predominate here (*see supra*, Section III.C.1.b), including whether Defendant willfully failed to follow the FCRA with its conduct toward Class Members. *See In re Checking Account*, 275 F.R.D. at 660 (holding that predominance requirement was satisfied where "common questions present a significant aspect of the case and can be resolved for all Settlement Class Members in a single adjudication"). Because the claims are being certified for purposes of settlement, there are no issues with manageability, and resolution of thousands of claims in one action is far superior to individual lawsuits and promotes consistency and efficiency of adjudication. *See* FED. R. CIV. P. 23(b)(3). For these reasons, preliminary certification of the Settlement Class for purposes of settlement is appropriate.

### b.   Class treatment is superior to alternative methods of adjudication

The Court should certify the Settlement Class if it finds that a "class action is superior to other available methods for fair and efficient adjudication of the controversy." FED. R. CIV. P. 23(b)(3). In evaluating this rule, the court's "focus is not on the convenience or burden of a class action suit per se, but on the relative advantages of a class action suit over whatever other forms of litigation might be realistically available to the plaintiffs." *Klay v. Humana, Inc.*, 382 F.3d 1241, 1269

(11th Cir. 2004). Thus, if no alternative method, such as individual interventions or consolidation of individual lawsuits, would be fairer or more efficient, the superiority requirement is satisfied. *Id.*

Class treatment here will facilitate the favorable resolution of all proposed Class Members' claims. Given the number of Settlement Class Members and the multitude of common issues present, the class device is also the most efficient and fair means of adjudicating these claims. This notion of fair adjudication is particularly applicable here, as most Class Members will likely first learn of a violation of their rights when they receive the Notice in this case. Particularly in the settlement context, class treatment is superior to multiple individual suits or piecemeal litigation of nearly identical claims because it greatly conserves judicial resources and promotes consistency and efficiency of adjudication. *See Klay*, 382 F.3d at 1273 (finding superiority requirement met where class action offered significant efficiencies for the parties and the court). The superiority requirement is therefore satisfied, and the Court should preliminarily approve the proposed Settlement.

**D.     The Proposed Notice Program Is Constitutionally Sound**

"Rule 23(e)(1)(B) requires the court to 'direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise' regardless of whether the class was certified under Rule 23(b)(1), (b)(2), or (b)(3)." MANUAL § 21.312. Many of the same considerations govern both certification and settlement notices. In order to protect the rights of absent class members, the Court must provide the best notice practicable to class members. *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811–12 (1985); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 174–75 (1974). "Rule 23 . . . requires that individual notice in [opt-out] actions be given to class members who can be identified through reasonable efforts.  Those who cannot be readily identified must be given the 'best notice practicable under the circumstances.'" MANUAL § 21.311. Courts have long recognized that direct-mail notice "is ordinarily sufficient to notify class members who have been identified." *In re Checking Account*, 830 F. Supp. 2d at 1340 (finding that direct mail notice was sufficient to put class members on notice of the settlement). According to the MANUAL, section 21.312, the settlement notice should:

- Define the class;

41

- Describe clearly the options open to the class members and the deadlines for taking action;

- Describe the essential terms of the proposed settlement;

- Disclose any special benefits provided to the class representatives;

- Provide information regarding attorneys' fees;

- Indicate the time and place of the hearing to consider approval of the settlement, and the method for objecting to or opting out of the settlement;

- Explain the procedures for allocating and distributing settlement funds, and, if the settlement provides different kinds of relief for different categories of class members, clearly set out those variations;

- Provide information that will enable class members to calculate or at least estimate their individual recoveries; and

- Prominently display the address and phone number of class counsel and the procedure for making inquiries.

The proposed forms of Notice, attached as Exhibits 2 and 3, satisfy all of these criteria. The Notice Plan provides for a first-class mailing to Class Members to the addresses contained in Defendant's records. (Settlement Agmt. § 3.3.2.) Those addresses will be updated using the United States Postal service's change of address database to their most current, to further ensure delivery to Class Members. (*Id.*) In addition, the Settlement Administrator will utilize an outside

42

database to update the addresses of any notices that are returned undeliverable, providing additional assurance that the most current Class Member addresses are used. (*Id*.)

Plaintiff submits that the Notice program outlined in the Settlement Agreement is the best practicable notice under the circumstances of this case and will be the most effective under the circumstances.

**E.    Scheduling Final Approval Hearings Is Appropriate**

The last step in the settlement approval process is a final fairness hearing at which the Court may hear all evidence and argument necessary to make its settlement evaluation. Proponents of the settlement may explain the terms and conditions of the settlement and offer argument in support of final approval. In addition, Settlement Class members, or their counsel, may be heard in support of or in opposition to the Settlement Agreement. The Court will determine after the final approval hearing whether the settlement should be approved and whether to enter a final order and judgment under Rule 23(e).  Plaintiff requests that the Court set a date for a Final Approval at the Court's earliest convenience.

## IV.      CONCLUSION

For the reasons stated above, the Court should (1) grant preliminary approval of the Settlement Agreement, including the settlement payment to the class and the fees and costs payment to class counsel; (2) provisionally certify the proposed Settlement Class and appoint Danny R. Teagle as representative of the Class; (3) appoint the law firm of Caddell & Chapman as Class Counsel; (4) approve the proposed notice plan and the form of settlement notice and order distribution of the notice; and (5) schedule the final fairness hearing at the first available date on the Court's schedule.

Dated:  April 12, 2013.

/s/   Michael A. Caddell
Michael A. Caddell (*pro hac vice*)
Cynthia B. Chapman (*pro hac vice*)
Craig C. Marchiando (*pro hac vice*)
**CADDELL & CHAPMAN**
1331 Lamar, Suite 1070
Houston TX 77010
(713) 751-0400
(713) 751-0906 (fax)

Mara McRae
Georgia Bar No. 499138
**McRae Brooks Warner LLC**
1175 Peachtree Street, Suite 2100
Atlanta, Georgia  30361
(404) 681-0700
(404) 681-0780 (fax)

Leonard A. Bennett (*pro hac vice*)
**Consumer Litigation Associates,
  P.C.**
763 J. Clyde Morris Blvd., Suite 1A
Newport News, VA 23601

***Counsel for Plaintiff***

## <u>CERTIFICATE OF COMPLIANCE</u>

The foregoing document complies with the typeface requirements of Local Rule 5.1C and the type style requirements of Local Rule 5.1C(3) using Times New Roman 14 point font.

<u>/s/  Michael A. Caddell</u>
Michael A. Caddell (*pro hac vice*)
Cynthia B. Chapman (*pro hac vice*)
Craig C. Marchiando (*pro hac vice*)
**CADDELL & CHAPMAN**
1331 Lamar, Suite 1070
Houston TX 77010
(713) 751-0400
(713) 751-0906 (fax)

***Counsel for Plaintiff***

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 12, 2013, a copy of the foregoing document was electronically filed with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to the following:

James F. McCabe (pro hac vice)
MORRISON & FOERSTER LLP
425 Market St., 32nd Floor
San Francisco, CA 94105
Telephone: (415) 268-7000
Facsimile: (415) 268-7522
jmccabe@mofo.com

Jill A. Pryor
Alison B. Prout
BONDURANT, MIXSON &
ELMORE, LLP
3900 One Atlantic Center
1201 West Peachtree St. N.W.
Atlanta, GA 30309
Telephone: (404) 881-4100
Facsimile: (404) 881-4111
pryor@bmelaw.com
prout@bmelaw.com

***Counsel for Defendant***
***LexisNexis Screening Solutions, Inc.***

/s/  Craig C. Marchiando
Craig C. Marchiando

***Counsel for Plaintiff***