# EXHIBIT 1
Declaration of Craig C. Marchiando

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| DANNY R. TEAGLE and JESUS SALAZAR, JR., individually and on behalf of all others similarly situated, | § § § § § § | |
| Plaintiffs, | § § | No. 1:11-CV-1280-RWS-JSA |
| v. | § § | |
| LEXISNEXIS SCREENING SOLUTIONS, INC., formerly known as CHOICEPOINT'S WORKPLACE SOLUTIONS, INC., | § § § § § § | |
| Defendant. | § § | Jury Trial Demanded |

### DECLARATION OF CRAIG C. MARCHIANDO IN SUPPORT OF MOTION FOR PRELIMNARY APPROVAL OF CLASS ACTION SETTLEMENT AND RELATED ORDERS

I, Craig C. Marchiando, declare as follows:

1.  My name is Craig C. Marchiando. I am over twenty-one years of age, am competent to make this Declaration, and have personal knowledge of the facts stated herein, each of which is true and correct.

2. I am one of the attorneys working on behalf of the Plaintiffs and the putative Classes in the above-styled litigation, and I am an attorney of the law firm of Caddell & Chapman.

3. I submit this Declaration in support of Plaintiff's Motion for Preliminary Approval of Class Action Settlement and Related Orders.

4. While discussing the dismissal of his claims against Igloo, Plaintiff began discovery against LexisNexis, which resulted in the exchange of documents.

5. After amending Plaintiff's Complaint to include class claims on behalf of Plaintiff Jesus Salazar, Jr., Plaintiffs learned through discovery that Plaintiff Salazar did not fall into the originally pleaded Classes and so his claims were not appropriate for classwide resolution.

6. Salazar has therefore separately resolved, on an individual basis, his claims against LexisNexis for the inaccuracy of his report.

7. After several agreed deadline extensions and meet-and-confer discussions regarding discovery, LexisNexis produced—through four supplements—1,288 pages of documents.

8. As the Parties sought to schedule depositions in anticipation of Plaintiff Teagle's Motion for Class Certification, they agreed to stipulate to many of the evidentiary points that would support that Motion.

9. The discussions surrounding the evidentiary stipulation eventually lead to the Parties' settlement.

10. After arms'-length negotiations produced a tentative settlement, the Parties agreed upon an informal exchange of information that would support both the settlement terms and class sizes.

11. Over the course of several weeks before the filing of Plaintiff's Complaint, his Counsel investigated potential claims, researched legal issues, and prepared the Complaint.

12. As the case and settlement talks unfolded, Plaintiff's Counsel was particularly focused on establishing the claimed Class sizes as well as LexisNexis' procedures for meeting its FCRA requirements when selling consumer reports for use during the hiring process.

13. LexisNexis produced merits-related discovery, which established the procedures it ordinarily followed in providing the required notices to individuals whose consumer reports were sold for and used as part of the hiring process as well

as the methods it uses to cull information that must be excluded from such reports because it is more than seven years old.

14. Plaintiff's Counsel reviewed every page of documentation, and continued with discussions with LexisNexis to refine the discovery to focus on information relevant to Plaintiff's claims and to obtain additional information and discovery materials.

15. Importantly, the settlement discussions and discovery revealed that the Classes' claims were the result of a programming omission by LexisNexis when it changed a reporting process and of errors made by state agencies that provided information to LexisNexis, which it discovered during its investigation of the facts of this lawsuit.

16. The discovery process ultimately assisted the Parties in reaching their settlement, as it both pinpointed the processes that support Plaintiff's claims and allowed the Parties to fully grasp the breadth of the claims applied across the Classes.

17. This discovery process proved invaluable in allowing Counsel for both sides to assess the strengths and weaknesses of the case going forward, and

also aided in finally agreeing that the Proposed Settlement is fair, reasonable, and adequate under the circumstances.

18. Plaintiff and LexisNexis agree that the Notice Class consists of up to approximately 18,000 individuals, who can be readily identified from LexisNexis' records.

19. Plaintiff and LexisNexis agree that the Obsolete Information Class consists of up to approximately 700 individuals, who can be readily identified from LexisNexis' records.

20. Following preliminary approval of the Settlement, the Settlement Administrator will send each Class Member, by First Class Mail, a Summary Notice letter specific to each Defendant outlining the Settlement terms and relief, and directing Class Members to contact the Settlement Administrator or Plaintiff's Counsel with any concerns about the Settlement.

21. Due to the national scope and population size of the Classes, the Parties have agreed that it is appropriate to hire a Settlement Administrator to attend to the details of monitoring the notice program, exclusion requests, and payment processing.

22. Plaintiff's Counsel estimates that the amount it will request for attorneys' fees and costs—$350,000—approximately equals the attorneys' fees and costs counsel has incurred in this case.

23. This amount was negotiated at arms'-length, after the Parties had reached the settlement agreement.

24. What Plaintiff learned in discovery—that mere programming oversights and errors by state agencies in reporting information, rather than conscious decisions by LexisNexis, caused notice letters to be mailed late and obsolete information to be included in Teagle's report—cuts against Plaintiff's position that LexisNexis was willful in its violations.

25. From the supplemental discovery responses of LexisNexis, Plaintiff also confirmed that the systems used to create reports on all Class Members were largely computerized and automatic, meaning LexisNexis treated all Class Members identically.

26. LexisNexis has provided more than 1,200 pages of documents and discovery responses confirming Class membership and specifically addressing the programming oversights that LexisNexis discovered and corrected as a result of this lawsuit.

27. Any additional discovery would not yield larger Class populations or better results for Class Members.

28. The documents and information provided further supports Plaintiff's theory that in the cases of the Class Members, Defendant improperly complied with the FCRA's notice requirements and reporting restrictions during the relevant time period. This same information provides serious doubts as to whether Plaintiff could prove his and the Classes' entitlement to statutory damages for willful violations.

29. I attach to Plaintiff's Motion for Preliminary Approval of Class Action Settlement and Related Orders Exhibits 1 through 7. Each is a true and correct copy of that which it purports to be.

I declare, under penalty of perjury under the laws of the United States and the State of Texas, that the foregoing is true and correct.

Executed this 8th day of April 2013, in Houston, Texas.

/s/ Craig C. Marchiando
Craig C. Marchiando

## CERTIFICATE OF COMPLIANCE

The foregoing document complies with the typeface requirements of Local Rule 5.1C and the type style requirements of Local Rule 5.1C(3) using Times New Roman 14 point font.

          /s/  Craig C. Marchiando
Michael A. Caddell (*pro hac vice*)
Cynthia B. Chapman (*pro hac vice*)
Craig C. Marchiando (*pro hac vice*)
**CADDELL & CHAPMAN**
1331 Lamar, Suite 1070
Houston TX 77010
(713) 751-0400
(713) 751-0906 (fax)

*Counsel for Plaintiff*