# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | | |
|---|---|---|
| **DANNY R. TEAGLE and JESUS SALAZAR, JR., individually and on behalf of all others similarly situated,** | § § § § § | |
| **Plaintiffs,** | § § | |
| **v.** | § § | **No. 1:11-CV-1280-RWS-JSA** |
| **LEXISNEXIS SCREENING SOLUTIONS, INC., formerly known as CHOICEPOINT'S WORKPLACE SOLUTIONS, INC.,** | § § § § § | |
| **Defendant.** | § § | **Jury Trial Demanded** |

---

## PLAINTIFF'S MEMORANDUM OF LAW
## IN SUPPORT OF MOTION FOR FINAL APPROVAL
## OF CLASS ACTION SETTLEMENT AND RELATED ORDERS

---

# **TABLE OF CONTENTS**

I.    INTRODUCTION AND RELIEF REQUESTED ..........................................1

II.   Statement of Facts............................................................................2

      A.    Factual and Procedural Background .....................................................2

      B.    Counsel Thoroughly Investigated the Proposed Classes' Claims.........5

      C.    The Proposed Settlement.......................................................6

      D.    Preliminary Approval of the Settlement ...............................................7

III.  ARGUMENT AND AUTHORITIES ...........................................................7

      A.    Standards for Approval of Class Action Settlements...........................7

      B.    The Settlement Here Satisfies the Criteria for Approval ...................10

            1.    Plaintiff believes in his case, but agrees to settle for
                  the sake of obtaining certain relief now given
                  the challenges that would exist at trial.....................................11

            2.    The amount offered in settlement is outstanding under
                  the circumstances, and favors settlement..................................15

            3.    The proposed Settlement is reasonable in view of the
                  possibility that class action status might not be attained .........18

            4.    Continued litigation would likely not result in a better
                  settlement for the Classes and would only waste time,
                  effort, and energy ....................................................................19

ii

5.     Adequate discovery supports the Settlement ............................21

6.     Class Member reaction to the Settlement has been
       universally positive ..................................................................22

7.     Counsel views the Settlement as excellent and
       recommends it be preliminarily approved ...............................23

C.  This Case Also Satisfies the Rule 23 Requisites, Making
    Preliminary Certification Appropriate .................................................25

    1.     The Rule 23(a) requirements are met here................................25

           a.     The Class is sufficiently numerous that joinder
                  is impracticable ............................................................25

           b.     There are common issues of law and fact that favor
                  class treatment ..............................................................26

           c.     The Named Plaintiff's claims are typical of those of
                  the Classes .....................................................................27

           d.     The Named Plaintiff and his Counsel adequately
                  represent the Classes.....................................................29

    2.     The Proposed Settlement meets the predominance and
           superiority requirements of Rule 23(b)(3) ...............................30

           a.     Common questions predominate, making class
                  treatment appropriate .....................................................31

           b.     Class treatment is superior to alternative methods
                  of adjudication ...............................................................32

D.  The Proposed Notice Program Is Constitutionally Sound .................33

E.   The Court Should Award the Requested Class Representative
Service Award, Plaintiff's Counsel's Reasonable Attorneys'
Fees, and Plaintiff's Counsel's Expenses Reasonably Incurred .........35

1.   Plaintiff Teagle deserves the modest service award
requested ...................................................................................36

2.   Counsel's fees and expenses should be awarded because
they were reasonably incurred and meet the Eleventh
Circuit's strictures for such awards ...........................................37

a.   Counsel's fees are reasonable in relation to the
result obtained, and should be paid ................................37

i.   Time and labor required, novelty of the issues,
and skill required to perform the legal work........40

ii.   The preclusion of other employment,
the customary fee in contingent cases, and
the amount involved and the results obtained......42

iii.   The experience, reputation, and ability of
the attorneys and awards in similar cases ............47

iv.   The reaction of Class Members also favors
granting the requested fee ....................................49

b.   Counsel's expenses are reasonable and should be
awarded ...........................................................................51

IV.   CONCLUSION...........................................................................................52

# TABLE OF AUTHORITIES

**Cases**

*Allapattah Services, Inc. v. Exxon Corp.*,
    333 F.3d 1248 (11th Cir. 2003) ................................................................32

*Amchem Prods., Inc. v. Windsor*,
    521 U.S. 591 (1997) ..............................................................................31

*Assoc. for Disabled Americans, Inc. v. Amoco Oil*,
    211 F.R.D. 457 (S.D. Fla. 2002) ..............................................................7

*Barron v. TransUnion Corp.*,
    82 F. Supp. 2d 1288 (M.D. Ala. 2000) ....................................................14

*Beatty v. Cont'l Auto. Sys. U.S., Inc.*,
    No. CV-11-S-890-NE, 2012 WL 1886134, at *1
    (N.D. Ala. May 21, 2012) .......................................................................8

*Bennett v. Behring Corp.*,
    737 F.2d 982 (11th Cir. 1984) .......................................................7, 9, 11

*Bowen v. SouthTrust Bank of Ala.*,
    760 F. Supp. 2d 889 (M.D. Ala. 1991) ..............................................46, 47

*Brim v. Midland Credit Mgmt.*,
    795 F. Supp. 2d 1255 (N.D. Ala. 2011) ...................................................14

*Bullock v. Adm'r of Estate of Kircher*,
    84 F.R.D. 1 (D.N.J. 1979) ......................................................................49

*Camden I Condo. Ass'n, Inc. v. Dunkle*,
    946 F.2d 768 (11th Cir. 1991) ...........................................................39, 44

*Campos v. ChoicePoint, Inc.*,
    237 F.R.D. 478 (N.D. Ga. 2006) ...........................................................18, 45

*Cotton v. Hinton*,
    559 F.2d 1326 (5th Cir. 1977) ......................................................................8

*Diaz v. Hillsborough County Hosp. Auth.*,
    No.8:90-CV-120-T-25B, 2000 WL 1682918 at *1
    (M.D. Fla. Aug. 7, 2000) ...........................................................................46

*Eisen v. Carlisle & Jacquelin*,
    417 U.S. 156 (1974).....................................................................................34

*Elkins v. Equitable Life Ins. of Iowa*,
    No. CivA96–296–Civ–T–17B, 1998 WL 133741, at *1
    (M.D. Fla. Jan. 27, 1998)...........................................................................50

*Faught v. Am. Home Shield Corp.*,
    668 F.3d 1233 (11th Cir. 2011) .............................................................38, 44

*Figueroa v. Sharper Image Corp.*,
    517 F. Supp. 2d 1292 (S. D. Fla. 2007).......................................................24

*Freeman v. Motor Convoy, Inc.*,
    409 F. Supp. 1100 (N.D. Ga. 1976).............................................................26

*Hansen v. Ticket Track, Inc.*,
    213 F.R.D. 412 (W.D. Wash. 2003) ............................................................27

*Hillis v. Equifax Consumer Servs., Inc.*,
    No. 104-cv-3400-TCB, 2007 WL 1953463, at *1
    (N.D. Ga. June 12, 2007)......................................................................36, 37

*In re Checking Account Overdraft Litig.*,
    275 F.R.D. 654 (S.D. Fla. 2011)............................................................*passim*

*In re Domestic Air Transp. Antitrust Litig.*,
    148 F.R.D. 297 (N.D. Ga. 1993) ......................................................11, 49, 51

*In re Farmers Ins. Co., Inc., FCRA Litig.*,
    738 F. Supp. 2d 1180 (W.D. Okla. 2010)......................................................20

*In re Motorsports Merchandise Antitrust Litig.*,
    112 F. Supp. 2d 1329, 1333 (N.D. Ga. 2000)....................................10, 11, 20

*In re Sunbeam Sec. Litig.*,
    176 F. Supp. 2d 1323 (S.D. Fla. 2001).............................................10, 39, 40

*Johnson v. Ga. Highway Express, Inc.*,
    488 F.2d 714 (5th Cir. 1974) ........................................................................39

*Juris v. Inamed Corp.*,
    685 F.3d 1294 (11th Cir. 2012) ....................................................................22

*Kilgo v. Bowman Transp., Inc.*,
    789 F.2d 859 (11th Cir. 1986) ......................................................................25

*Kirkpatrick v. J.C. Bradford & Co.*,
    827 F.2d 718 (11th Cir. 1987) ......................................................................29

*Klay v. Humana, Inc.*,
    382 F.3d 1241 (11th Cir. 2004) ....................................................................33

*Loranger v. Steirheim*,
    10 F.3d 776 (11th Cir. 1994) ........................................................................40

*Mashburn v. Nat'l Healthcare, Inc.*,
    684 F. Supp. 679 (M.D. Ala. 1988)..............................................................44

*McCluskey v. Trustees of Red Dot Corp. Employee Stock Ownership Plan & Trust*,
    268 F.R.D. 670 (W.D. Wash. 2010) ............................................................26

*Olson v. Tesoro*,
    2007 WL 2703053 (W.D. Wash. Sept. 12, 2007) ........................................26

*Phillips Petroleum Co. v. Shutts*,
    472 U.S. 797 (1985) ...................................................................................34

*Pinto v. Princess Cruise Lines, Ltd.*,
    513 F. Supp. 2d 1334 (S.D. Fla. 2007) .............................................44, 49, 50

*Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc.*,
    601 F.3d 1159 (11th Cir. 2010) ....................................................................31

*Safeco Inc. Co. of Am. v. Burr*,
    551 U.S. 47 (2007) ................................................................................13, 14

*States of N.Y. & Md. v. Nintendo of Am., Inc.*,
    775 F. Supp. 676 (S.D.N.Y. 1991) ................................................................23

*Waters v. Int'l Precious Metals Corp.*,
    190 F.3d 1291 (11th Cir. 1999) ....................................................................46

*Williams v. Mohawk Indus., Inc.*,
    568 F.3d 1350 (11th Cir. 2009) ....................................................................26

**RULES**

FED. R. CIV. P. 23 ...............................................................................................*passim*

**STATUTES**

15 U.S.C. § 1681n ............................................................................................ *passim*

**TREATISES**

4 NEWBERG ON CLASS ACTIONS
        § 11.41 (4th ed. 2002).......................................................................................8

MANUAL FOR COMPLEX LITIGATION (FOURTH) § 21.311 ........................................34

MANUAL FOR COMPLEX LITIGATION (FOURTH) § 21.312 ........................................34

## I.      INTRODUCTION AND RELIEF REQUESTED

Plaintiff moves for final approval of the class action settlement agreement reached between Plaintiff and Defendant LexisNexis Screening Solutions, Inc. ("LexisNexis"). The Court granted preliminary approval of the settlement on April 22, 2013 (Dkt. No. 84), and the Parties notified the Classes of the settlement on May 21, 2013. (*See* Dkt. No. 89, Declaration of L. Stephens Tilghman ("Tilghman Decl.") ¶ 6.) For the reasons set forth in this Memorandum and supporting documents, the proposed settlement agreement is fair, reasonable, and adequate, and serves the best interests of the Class Members.

Plaintiff therefore requests that the Court take the following steps in the settlement approval process: (1) finally approve the settlement relief to the Classes and the fees and costs payment to Plaintiff's Counsel; (2) finally certify the settlement Classes and appoint Danny R. Teagle as the Representative of the Settlement Classes; (3) appoint Plaintiff's Counsel as Counsel for the Settlement Classes; (4) overrule all Class Member objections, if any; (5) dismiss with prejudice all claims against LexisNexis by Class Members who have not properly excluded themselves from the Classes; and (6) approve the service award for Class Representative Teagle.

## II.   STATEMENT OF FACTS

**A.    Factual and Procedural Background**

Defendant LexisNexis is a credit reporting agency ("CRA") that provides, as pertinent here, background reports to employers for use in their hiring processes. (Dkt. No. 55 ¶ 11.) Plaintiff Teagle's lawsuit is based on the following allegations. In the summer of 2010, Plaintiff Teagle applied for work at Igloo, an employer that purchased from LexisNexis a background report on him. (*Id.* ¶¶ 14, 16.) Igloo offered Plaintiff Teagle a job, but later rescinded that offer based on information contained in the report Igloo purchased from LexisNexis. (*Id.* ¶ 16.)

Several days after LexisNexis provided Igloo with the report on Teagle and Igloo rescinded its offer of employment, Teagle received a letter from LexisNexis that contained the report and a summary of his FCRA rights. (*Id.* ¶ 18.) The LexisNexis report contained two entries of criminal history—neither of which were convictions of crimes—that predated the report by more than seven years, meaning the information should have been excluded from the report. (*Id.* ¶¶ 17, 60.) Neither LexisNexis nor Igloo provided Teagle with a copy of the LexisNexis report before Igloo took the adverse-employment action against him. (*Id.* ¶¶ 17–18.)

Teagle filed this lawsuit, acting as the sole Named Plaintiff, against LexisNexis and Igloo on April 20, 2011. (Dkt. No. 1.) Teagle alleged claims under the Fair Credit Reporting Act on behalf of three national Classes, two pertaining to claims against LexisNexis and one against Igloo. (*Id.* ¶¶ 2–4.) During the initial pendency of the case, Igloo was able to convince Teagle that he was the sole member of the Class against Igloo, so Teagle agreed to an individual settlement with Igloo and dismissed it as a Defendant. (*See* Dkt. No. 44.) During this same time period, Plaintiff and LexisNexis agreed to extensions of time for LexisNexis to answer the Complaint and for Plaintiff to move for class certification, and they also negotiated and filed for Court approval their proposed discovery plan. (Dkt. Nos. 18, 29, and 28.)

Also while discussing the dismissal of his claims against Igloo, Plaintiff began discovery against LexisNexis, which resulted in the exchange of documents. (Dkt. No. 78-2, April 8, 2013 Declaration of Craig C. Marchiando ("Marchiando Decl.") ¶ 4.) The Parties also negotiated, and the Court entered, an agreed protective order. (Dkt. Nos. 41, 53.)

After several agreed deadline extensions and meet-and-confer discussions regarding discovery, LexisNexis produced—through four supplements—1,288

3

pages of documents. (Dkt. No. 78-2, Marchiando Decl. ¶ 7.) As the Parties sought to schedule depositions in anticipation of Plaintiff Teagle's Motion for Class Certification, they agreed to stipulate to many of the evidentiary points that would support that Motion. (*Id.* ¶ 8.) The discussions surrounding the evidentiary stipulation eventually lead to the Parties' settlement, which they present here for the Court's final approval. (*Id.* ¶ 9.)

After arms'-length negotiations produced a tentative settlement, the Parties agreed upon an informal exchange of information that would support both the settlement terms and class sizes. (*Id.* ¶ 10.) LexisNexis provided this information in the form of supplemental discovery responses, which establish, among other key points, that the proposed Notice Settlement Class includes up to approximately 18,000 individuals, and the proposed Obsolete Information Settlement Class includes up to approximately 700 individuals. (Dkt. No. 78-3, LexisNexis' Supplemental Response to Plaintiffs' Discovery Requests ("Suppl. Responses") ¶¶ 18, 28 (filed under seal); Dkt. No. 78-8, Settlement Agmt. § 3.4.2.) This information also supports the limitations on the definitions of the Classes, as well as establishing—as set forth below—the typicality, commonality, predominance, and superiority requirements of Rule 23.

**B.      Counsel Thoroughly Investigated the Proposed Classes' Claims**

Over the course of several weeks before the filing of Plaintiff's Complaint, his Counsel investigated potential claims, researched legal issues, and prepared the Complaint. (Dkt. No. 78-2, Marchiando Decl. ¶ 11.) As the case and settlement talks unfolded, Plaintiff's Counsel was particularly focused on establishing the claimed Class sizes as well as LexisNexis' procedures for meeting its FCRA requirements when selling consumer reports for use during the hiring process. (*Id.* ¶ 12.) LexisNexis produced merits-related discovery, which established the procedures it ordinarily followed in providing the required notices to individuals whose consumer reports were sold for and used as part of the hiring process as well as the methods it uses to cull information that must be excluded from such reports because it is more than seven years old. (*Id.* ¶ 13.) Plaintiff's Counsel reviewed every page of documentation, and continued with discussions with LexisNexis to refine the discovery to focus on information relevant to Plaintiff's claims and to obtain additional information and discovery materials. (*Id.* ¶ 14.) Importantly, the settlement discussions and discovery revealed that the Classes' claims were the result of a programming omission by LexisNexis when it changed a reporting process and of errors made by state agencies that provided information to

LexisNexis, which it discovered during its investigation of the facts of this lawsuit. (*Id.* ¶ 15.)

As it should, the discovery process ultimately assisted the Parties in reaching their settlement, as it both pinpointed the processes that support Plaintiff's claims and allowed the Parties to fully grasp the breadth of the claims applied across the Classes. (*Id.* ¶ 16.) This discovery process proved invaluable in allowing Counsel for both sides to assess the strengths and weaknesses of the case going forward, and also aided in finally agreeing that the Proposed Settlement is fair, reasonable, and adequate under the circumstances. (*Id.* ¶ 17.)

## C.     The Proposed Settlement

As set forth in the Court's Order Granting Preliminary Approval (Dkt. No. 84), the Parties propose a settlement that provides a cash award to the members of two nationwide Classes on whom LexisNexis prepared consumer background reports for employment purposes. (*See id.*)[1] The Parties also agreed on focused releases of claims, which explicitly preserved claims related to inaccuracy of Class Members' reports. (*See* Dkt. No. 78-8 §§ 4.1, 4.2.)

---

[1]   Plaintiff incorporates by reference the Class definitions and settlement terms from the Court's order. (Dkt. No. 84 ¶ 5.)

**D.      Preliminary Approval of the Settlement**

On April 22, 2013, the Court issued its Order Granting Motion for Preliminary Approval of Class Action Settlement and Related Orders. (Dkt. No. 84.) In that Order, the Court preliminarily certified the Classes set forth in the Settlement Agreement, concluding that they initially met the requirements of Rule 23. (*Id.* at 2–5.) The Court also preliminarily appointed Plaintiff Danny R. Teagle as representative of the Settlement Classes and Caddell & Chapman as Counsel for the Classes. (*Id.* at 5.) The Court further approved the proposed Notice Letters to Class Members, and ordered them distributed within 30 days of its Order. (*Id.* at 6–7.) In a subsequent Order, the Court set the Final Approval Hearing for July 31, 2013. (Dkt. No. 86.)

## III.   ARGUMENT AND AUTHORITIES

**A.      Standards for Approval of Class Action Settlements**

Federal courts strongly favor settlements, especially in class actions and other complex matters where the costs, delays, and risks of continued litigation might overwhelm any potential benefit the class could hope to obtain. *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984) (noting that "our judgment is informed by the strong judicial policy favoring settlement"); *Assoc. for Disabled*

*Americans, Inc. v. Amoco Oil*, 211 F.R.D. 457, 466 (S.D. Fla. 2002) (citing *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977)) ("There is an overriding public interest in favor of settlement, particularly in class actions that have the well-deserved reputation as being most complex."); *see also* 4 NEWBERG ON CLASS ACTIONS ("NEWBERG") § 11.41 (4th ed. 2002) (citing cases). The traditional means for handling claims like those at issue here—individual litigation—would unduly tax the court system, require a massive expenditure of public and private resources, and, given the relatively small value of the claims of the individual Settlement Class Members, be impracticable. Thus, the proposed Settlement is the best vehicle for Settlement Class Members to receive the relief to which they are entitled in a prompt and efficient manner.

In addition to showing the settlement is fair, reasonable, and adequate, Plaintiff must also meet the requirements of Federal Rule of Civil Procedure 23 to obtain final approval. *Beatty v. Cont'l Auto. Sys. U.S., Inc.*, No. CV-11-S-890-NE, 2012 WL 1886134, at *6 (N.D. Ala. May 21, 2012).  Rule 23(a) grants class action status to cases in which:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative

8

> parties are typical of the claims or defenses of the class; and
> (4) the representative parties will fairly and adequately protect
> the interests of the class.

FED. R. CIV. P. 23(a). These requirements are more commonly known as numerosity, commonality, typicality, and adequacy of representation. *See In re Checking Account Overdraft Litig.*, 275 F.R.D. 654, 659 (S.D. Fla. 2011). An action that satisfies these requirements must, in addition, meet one of the prerequisites of Rule 23(b) to be maintained as a class action. *Id.* Here, the Court granted preliminary certification under Rule 23(b)(3), which allows certification of a class action if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." FED. R. CIV. P. 23(b)(3); (Dkt. No. 38 ¶ 2.)

With this Motion, Plaintiff requests that the Court take the final step in the approval process and finally approve the Settlement. The purpose of this final evaluation is to ensure that the settlement is fair, reasonable, and adequate since it will bind absent class members. FED. R. CIV. P. 23(e). The decision to approve or reject a proposed settlement is committed to the Court's sound discretion. *See Bennett*, 737 F.2d at 986 ("Determining the fairness of the settlement is left to the

sound discretion of the trial court and we will not overturn the court's decision absent a clear showing of abuse of that discretion."); *see also In re Sunbeam Secs. Litig.*, 176 F. Supp. 2d 1323, 1329 (S.D. Fla. 2001) (holding that "a district court is vested with broad discretion" in making the settlement approval determination).

Here, as set forth below, the Settlement falls well within the range of reasonableness the Eleventh Circuit has established for approval. It is non-collusive, fair, and reasonable. The Settlement provides a genuine benefit to Settlement Class Members by providing them with a significant percentage of their maximum possible claim while eliminating the substantial risks and long delays of litigation.

**B.    The Settlement Here Satisfies the Criteria for Approval**

The Court may approve a class action settlement if, after holding a hearing, it concludes that the settlement is "fair, reasonable, and adequate." FED. R. CIV. P. 23(e)(2). The purpose of this review is to ensure not only the adequacy, but that the settlement is free from fraud or collusion. *In re Motorsports Merchandise Antitrust Litig.*, 112 F. Supp. 2d 1329, 1333 (N.D. Ga. 2000). The Court's evaluation is not a trial on the merits, and "the court should be mindful of the judicial policy favoring settlement and cognizant that 'compromise is the essence of settlement.'" *Id.*

Absent any evidence of fraud or collusion, then, the Court "should be hesitant to substitute its own judgment for that of experienced counsel representing the class." *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 315 (N.D. Ga. 1993). The Court is therefore entitled to rely on the judgment of counsel in evaluating the settlement. *In re Motorsports*, 112 F. Supp. 2d at 1333.

The fairness determination involves the Court's consideration of several factors, including: "(1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate, and reasonable; (4) the complexity, expense, and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved." *Bennett*, 737 F.2d at 986. As set forth below, these factors favor granting final approval to the proposed settlement.

1. **Plaintiff believes in his case, but agrees to settle for the sake of obtaining certain relief now given the challenges that would exist at trial**

As set forth in Plaintiff's Complaint, he alleges that LexisNexis provided a report to Igloo for employment purposes, but then failed to follow the FCRA's requirements of timely notice and omitting of older information from reports it

sells. (Dkt. No. 55 ¶¶ 16–18.) During discovery and settlement discussions with LexisNexis, Plaintiff learned that during October 2008, LexisNexis changed the way in which it made certain criminal-history information available to users like Igloo. (Dkt. No. 78-3, Suppl. Responses ¶¶ 10–12.) As a result of that change, notice letters required by 15 U.S.C. § 1681k(a)(1)—which must be sent "at the time" derogatory-public-record information is made available to users for employment purposes—were, in a relatively small percentage of cases, inadvertently sent some time after reports were made available to LexisNexis' customers. (*Id.* ¶ 12.) LexisNexis first learned of this programming error during its investigation of the facts of this lawsuit. (*Id.* ¶ 17.)

Similarly, during the investigation of the facts underlying this lawsuit, LexisNexis determined that two Texas counties—one of which reported criminal history information regarding Plaintiff Teagle that was not a conviction but was more than seven years old—mistakenly reported dispositions of criminal cases in a field other than the field reserved for disposition information. (*Id.* ¶¶ 22–27.) Thus, when LexisNexis searched the criminal histories for individuals reported by these counties, it would not detect that this item of criminal history was more than seven years old and therefore should be excluded from Teagle's report. (*Id.* ¶¶ 22–27.)

Since the filing of this lawsuit and discovery of these programming issues, LexisNexis has changed its systems to timely send the notices required by Section 1681k and to take other steps to properly identify information that should be excluded from consumer reports because it is older than seven years. (*Id.* ¶¶ 17, 27.)

Knowing these facts about LexisNexis' former processes for creating and selling consumer reports for employment purposes, however, does not mean that Plaintiff and the Class will necessarily prevail on their claims. Because the Class claims here seek statutory rather than actual damages, the Class must show that LexisNexis willfully violated the FCRA. *See* 15 U.S.C. § 1681n; (*see also* Dkt. No. 55 ¶¶ 57, 61.) In the FCRA context, willfulness embraces not only knowing violations, but reckless ones as well. *Safeco Inc. Co. of Am. v. Burr*, 551 U.S. 47, 57–58 (2007). Should Plaintiff carry his burden of showing willfulness, Defendant is subject to statutory damages of between $100 and $1,000 per violation, as well as punitive damages "as the court may allow." 15 U.S.C. § 1681n(a). Plaintiff is also entitled to attorneys' fees and costs of suit if he successfully proves willfulness. *Id.*

Courts generally view willfulness as a jury question, making it ill-suited for determination on summary judgment. *See Brim v. Midland Credit Mgmt.*, 795 F. Supp. 2d 1255, 1259 (N.D. Ala. 2011) (holding that court would not "substitute its own finding of credibility for that of the jury" on willfulness under the FCRA); *Barron v. TransUnion Corp.*, 82 F. Supp. 2d 1288, 1299 (M.D. Ala. 2000) (denying motion for summary judgment on willfulness issue, finding that "a question of fact exists as to whether Defendant willfully failed to investigate the dispute"). Thus, should he pursue his claims rather than settle them, this authority shows Plaintiff has a good chance that those claims would survive summary judgment and reach a jury.

On the other hand, the revelation in discovery that mere programming oversights and errors by state agencies in reporting information, rather than conscious decisions by LexisNexis, caused notice letters to be mailed late and obsolete information to be included in Teagle's report cuts against Plaintiff's position that LexisNexis was willful in its violations. (*See* Dkt. No. 78-2, Marchiando Decl. ¶ 24.) While willfulness does include FCRA violations that are reckless, *Safeco*, 551 U.S. at 57–58, Plaintiff believes it could be difficult to convince the Court or a jury that computer errors and errors made by state agencies

14

meet this definition. Though Plaintiff is hopeful that he could still prove his willfulness claims with additional discovery, he believes the better course is to settle them because there is a real danger that he will fail to prove willfulness and end up with nothing for himself and the Classes. This factor favors granting preliminary approval of the Settlement.

### 2. The amount offered in settlement is outstanding under the circumstances, and favors settlement

As set forth in the Settlement Agreement, members of the Notice Class will receive $50, while members of the Obsolete Information Class will be paid $150 each, and those individuals in both Classes will receive two payments. (Dkt. No. 78-8, Settlement Agmt. § 5.2.) The Settlement therefore benefits individuals with difficult-to-prove (if they can be proven at all) willfulness claims, and the Settlement gives $50 or $150 of relief to those Class Members despite this potential shortcoming.[2] (*See id.*) If some of these individuals took their claims to trial, they would likely lose, but the Settlement provides them relief anyway.

The amounts that members of the Settlement Classes will receive reflect these potential difficulties, and further support the conclusion that the settlement is

---

[2] Class Members with genuine claims of inaccuracy or regarding LexisNexis' reinvestigation process do not give up those claims in exchange for the monetary relief in this settlement. (*See id.* §§ 4.1, 4.2.)

fair, reasonable, and adequate. Members of the Notice Class receive $50, which is near the statutory minimum of damages for a willful violation, 15 U.S.C. § 1681n(a), even though it will likely be difficult to prove willfulness because the alleged violation resulted from a programming oversight at LexisNexis. Simply put, these individuals will receive a payment for a programming oversight that caused their notice letter to simply be mailed late, as opposed to the letter not being mailed at all. Given, then, that LexisNexis has a strong defense that it did not willfully violate the FCRA because of the programming error, a $50 cash payment—which Class Members may spend as they choose—is a fine result because it provides Class Members with certain and genuine relief.

Members of the Obsolete Information Class will receive a larger payment—$150—also without regard to their being able to show the alleged violation occurred as a result of willful conduct by LexisNexis. This amount is more than the statutory minimum, 15 U.S.C. § 1681n(a), and is a larger sum because the obsolete information that was included in reports for this Class was criminal history, which has greater potential for harm to job-seeking consumers than the late mailing of letters for members of the Notice Class. Again, in light of the difficulties Plaintiff foresees in proving that LexisNexis willfully violated the FCRA, a cash payment

for members of the Obsolete Information Class is an excellent outcome. This is especially the case given the involvement of state agencies in these circumstances, and in light of the fact that the Class claims involve the reporting of accurate, albeit old, information.

In addition, the Settlement is excellent for Class Members because they need take no action to obtain a payment. (*Id*. § 5.2.) Thus, there is nearly no chance that a Class Member whose address can be verified will fail to receive his or her relief under the Settlement. Checks will be mailed to addresses that LexisNexis has in its own records, so Class Members need do nothing other than check their mail to receive their settlement funds.[3] (*Id.* § 3.3.3.) No settlement structure could be easier from the Classes' perspective, and there is simply no better way to ensure that Class Members receive their money through minimal effort on their part.

Finally, receiving $50 to $150 for LexisNexis' conduct is of great value to Class Members because the relief comes without regard to actual damages. In instances, for example, where individuals were disqualified from working somewhere because of information accurately reported but for whom LexisNexis

---

[3]   Of the nearly 18,000 notice letters mailed to Class Members, only 52 were returned to the Settlement Administrator, and it used forwarding addresses from the U.S. Postal Service to resend those notices. (Dkt. No. 89, Tilghman Decl. ¶ 8.) After that remailing, only 15 notices were returned. (*Id.*)

17

failed to give proper FCRA notice, they will be afforded relief under the Settlement. Those individuals, however, likely suffered no genuine damages because they were denied employment for which they were not qualified. Thus, the fact that a Class Member cannot show actual damages is not a bar to recovery under the Settlement. This is another superior point for Class Members, since the Settlement forgoes Class Members' need to show that they were actually injured as a prerequisite to recovery. (*See id.* § 5.2.) For all of these reasons, the result obtained on behalf of the Classes favors settlement.

### 3. The proposed Settlement is reasonable in view of the possibility that class action status might not be attained

While Plaintiff is also confident that he would prevail on his motion to certify the Classes, there is still a very realistic possibility that his motion would fail. Certification of classes under the FCRA is by no means guaranteed, as defendants are often able to raise sufficient arguments to defeat certification requests. *See, e.g.*, *Campos v. ChoicePoint, Inc.*, 237 F.R.D. 478, 490 (N.D. Ga. 2006) (granting in part and denying in part motion to certify FCRA classes). From the supplemental discovery responses of LexisNexis, the systems used to create reports on all Class Members were largely computerized and automatic, meaning

LexisNexis treated all Class Members identically. (Dkt. No. 78-2, Marchiando Decl. ¶ 25; Dkt. No. 78-3, Suppl. Responses ¶¶ 3–12, 22–26 (filed under seal).) Class Member claims will therefore rise or fall together. Since Plaintiff is not yet aware of the challenges to class certification the Defendant would mount, however, he cannot state with complete confidence that class certification is an utter certainty. The Settlement avoids this risk by eliminating a contested motion to certify the Classes in favor of providing immediate relief where there is a possibility that such relief could be lost with an unfavorable ruling on class certification. Again, this factor favors finally approving the Settlement.

### 4. Continued litigation would likely not result in a better settlement for the Classes and would only waste time, effort, and energy

Aside from problems presented by summary judgment and class certification, there are also other milestones that also remain in this litigation, namely, an extensive discovery process to support both class certification and the merits of Plaintiff's claims, the retention of experts and motion practice surrounding the fitness of their opinions, and other potentially dispositive challenges Defendant might bring. Of course, the possibility of appeals for any losses on these issues by either side threatens to further prolong the litigation. This

factor also favors the Settlement. *See In re Motorsports*, 112 F. Supp. 2d at 1333 (holding that class-action settlements "conserve judicial resources by avoiding the expense of a complicated and protracted litigation process").

In addition, since Class Members are receiving a recovery without having to show actual harm, it is doubtful that a better settlement would result from additional, protracted litigation. All of Plaintiff's and the Classes' damages hinge on a finding of willfulness, which is not a foregone conclusion, and the fact-finder has discretion to assess damages within the statutory range of $100 to $1,000 upon a finding of willfulness. *See* 15 U.S.C. § 1681n; *see also In re Farmers Ins. Co., Inc., FCRA Litig.*, 738 F. Supp. 2d 1180, 1226 (W.D. Okla. 2010) (discussing the propriety of an FCRA statutory-damages award in absence of actual harm, and concluding "that a reasonable jury should be able to determine the proper amount of damages within the statutory range"). Thus, in order for Plaintiff to obtain a higher award for the Class at trial, he would have to overcome the difficulties in proving willfulness in light of the simple explanations for the errors that occurred on the reports at issue here. Since further litigation risks much without the assurance of a greater recovery for the Classes, the Court should conclude that the Settlement warrants final approval.

### 5.     Adequate discovery supports the Settlement

As set forth above, LexisNexis has provided more than 1,200 pages of documents and discovery responses confirming Class membership and specifically addressing the programming oversights that LexisNexis discovered and corrected as a result of this lawsuit. (Dkt. No. 78-2, Marchiando Decl. ¶ 26.) Any additional discovery would not yield larger Class populations or better results for Class Members. (*Id.* ¶ 27.)This discovery confirms that the Notice Class numbers up to approximately 18,000 individuals, and the Obsolete Information Class numbers up to approximately 700 individuals. (*Id.* ¶¶ 18–19; Dkt. No. 78-3, Suppl. Responses ¶¶ 18, 28 (filed under seal).) The documents and information provided further support Plaintiff's theory that in the cases of the Class Members, Defendant improperly complied with the FCRA's notice requirements and reporting restrictions during the relevant time period. But, on the other hand, this same information provides serious doubts as to whether Plaintiff could prove his and the Classes' entitlement to statutory damages for willful violations. ([Dkt. No. 78-2, Marchiando Decl. ¶ 28.) Taken together, this information properly establishes the Class population and the viability of Plaintiff's willfulness claims, supporting the

conclusion that the Settlement is reasonable and adequate for those Class Members.

### 6.  Class Member reaction to the Settlement has been universally positive

Class Members had until June 14, 2013 to opt out of and July 1, 2013 to object to the Settlement. (Dkt. No. 89, Tilghman Decl. ¶¶ 9–10.) None have objected, and only six have opted out. (*Id*.; Ex. 1, Declaration of Michael Caddell ("Caddell Decl.") ¶ 46.) The notice mailing program has been remarkably accurate, with only 52 of 17,724 notices returned with forwarding addresses. (Dkt. No. 89, Tilghman Decl. ¶¶ 6, 8.) The administrator remailed the notices to these updated addresses, and all but 15 appear to have been accurate. (*Id.* ¶ 8.)[4] Even considering the fact that there may have been undelivered notices, it cannot be presumed that individuals not receiving notice would have been dissatisfied with the Settlement. Given the miniscule number of opt outs and complete lack of objections, it is appropriate to conclude that the Classes view the settlement as fair and adequate.

---

[4]  Plaintiff also notes that the Eleventh Circuit has acknowledged that actual notice is not a requirement to meet due process in a class action. *Juris v. Inamed Corp.*, 685 F.3d 1294, 1321 (11th Cir. 2012) ("Courts have consistently recognized that, even in Rule 23(b)(3) class actions, due process does not require that class members actually receive notice.").

### 7. Counsel views the Settlement as excellent and recommends it be preliminarily approved

Michael Caddell, proposed Lead Counsel for the Class, is a nationally recognized class action practitioner who has acted in a lead role in dozens of nationwide class actions involving consumer protection and the FCRA. (Ex. 1, Caddell Decl. ¶¶ 7–10.) As lead counsel, Mr. Caddell has been an integral part of many settlements, whether extensively litigated and appealed or agreed-upon early in the process. (*Id.* ¶¶ 7–12.) In his estimation, this Settlement is an excellent result because it provides Class Members with genuine relief as quickly as possible. (*Id.* ¶¶ 23–28.)

Courts recognize that settlements providing Class Members with cash are preferable to those offering other, nonmonetary forms of relief. *See States of N.Y. & Md. v. Nintendo of Am., Inc.*, 775 F. Supp. 676, 681 (S.D.N.Y. 1991) (remarking, during the evaluation of a settlement the provided consumers with a coupon for a discounted game cartridge, that "[c]onsumers obviously would prefer a check or cash"); *see also* FED. R. CIV. P. 23 advisory committee's note ("Settlements involving nonmonetary provisions for class members also deserve careful scrutiny to ensure that these provisions have actual value to the class.").

This Settlement falls precisely in line with this approach, as it provides Class Members with immediate, genuine relief that they are free to do with what they wish. (Ex. 1, Caddell Decl. ¶ 23.) A cash award is a far cry from, and is certainly more desirable than, coupon or voucher settlements that require a class member to continue its relationship with the defendant. *Cf. Figueroa v. Sharper Image Corp.*, 517 F. Supp. 2d 1292, 1329 (S. D. Fla. 2007) (refusing to approve coupon settlement as fair, adequate, or reasonable).

The Settlement also eliminates any risk that Class Members may lose on summary judgment, class certification, or at trial by paying them a sum certain now. (Ex. 1, Caddell Decl. ¶¶ 23–26.) Those sums, $50 or $150, are approximately the minimum amount of statutory damages that Plaintiff could obtain with a jury verdict. *See* 15 U.S.C. § 1681n(a)(1)(A). The Settlement cuts out all uncertainty and gives Class Members a portion of the statutory recovery without requiring that they even prove their claim is meritorious or take any action to receive their payment. (Ex. 1, Caddell Decl. ¶¶ 23–26.) The Settlement provides a cash payment in exchange for a release of claims that are of limited (or, perhaps no) value while preserving ones related to inaccuracy, and therefore provides an excellent result for the Classes. (*Id.* ¶ 28.) The Court should grant final approval to the Settlement.

**C.**   **This Case Also Satisfies the Rule 23 Requisites, Making Preliminary Certification Appropriate**

**1.**   **The Rule 23(a) requirements are met here**

**a.**   **The Class is sufficiently numerous that joinder is impracticable**

There is no hard-and-fast rule regarding the minimum number of individuals a class must contain to satisfy the numerosity requirement. Rather, "practicability of joinder depends on many factors, including, for example, the size of the class, ease of identifying its numbers and determining their addresses, facility on making service on them if joined and their geographic dispersion." *Kilgo v. Bowman Transp., Inc.*, 789 F.2d 859, 878 (11th Cir. 1986). This case meets the numerosity requirement, because joinder of all Class Members is not practical here.

As explained above, the Parties have identified from LexisNexis' records 17,206 members of the Notice Class and 518 members of the Obsolete Information Class (Dkt. No. 89, Tilghman Decl. ¶ 6), and those individuals are spread across the United States. These numbers, combined with the geographic disbursement of the Classes, weigh in favor of a conclusion that numerosity is met. *See Kilgo*, 789 F.2d at 878 (holding that numerosity requirement was met where plaintiffs had identified 31 individual class members); *see also McCluskey v. Trustees of Red Dot*

*Corp. Employee Stock Ownership Plan & Trust*, 268 F.R.D. 670, 673–74 (W.D. Wash. 2010) (finding numerosity met where class numbered 27, and collecting cases that found numerosity in classes numbering 20, 7, 35, 17, 18, 16, and 13).

> **b.** **There are common issues of law and fact that favor class treatment**

The test for commonality in questions of law and fact is qualitative as opposed to quantitative, meaning that one significant issue common to the class may be sufficient to warrant certification. *Williams v. Mohawk Indus., Inc.*, 568 F.3d 1350, 1355 (11th Cir. 2009) (holding that "'commonality requires that there be at least one issue whose resolution will affect all or a significant number of the putative class members'"); *see In re Checking Account*, 275 F.R.D. at 659 (holding that commonality was satisfied where liability depended on "class-wide policies and practices"). These requirements should be given a "liberal construction." *Freeman v. Motor Convoy, Inc.*, 409 F. Supp. 1100, 1113 (N.D. Ga. 1976) (explaining that "a broad definition of commonality of interests and typicality of claims is desirable"). Here, without class certification and settlement, each individual Class Member would be required to litigate a long list of common issues of law and fact, all relating to Defendant's alleged common course of conduct

involving its reporting processes. And, of course, since a key aspect of Plaintiff's claims is a lack of proper notice by LexisNexis (*see* Dkt. No. 55 ¶¶ 18, 56–58), some Class Members are likely unaware that their claims even exist.

Commonality is easily satisfied here based on common questions, including: (1) whether LexisNexis provides notice to consumers at the time it provides reports containing adverse information to employers; (2) whether LexisNexis has a system in place to remove information from consumer reports that is too old under the FCRA; (3) whether LexisNexis willfully adopted these systems; and (4) whether LexisNexis is liable for damages, and the amount of those damages. Because Plaintiff has identified numerous questions of law and fact common to all members of the Classes, Rule 23(a)(2)'s commonality requirement is fully satisfied. FED. R. CIV. P. 23(a)(2); *Williams*, 568 F.3d at 1355.

### c.   The Named Plaintiff's claims are typical of those of the Classes

Representative claims are "typical" if there is "a nexus between the class representative's claims or defenses and the common questions of fact or law which unite the class." *Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984). Typicality, however, does not require "identical claims or

defenses." *Id*.  Rather, "a factual variation will not render a class representative's claim atypical unless the factual position of the representative markedly differs from that of the other members of the class." *Id.*; *see also In re Checking Account*, 275 F.R.D. at 660 (finding typicality satisfied where named plaintiff's claims concerned same policies and practices, arose from the same legal theories, and alleged the same types of harm and entitlement to relief).

Here, Plaintiff has precisely the same claims as members of the Settlement Classes, and must also satisfy the same elements of each of those claims, along with other Settlement Class Members. Supported by identical legal theories, Plaintiff and all Class Members share claims based on the same course of conduct—Defendant's alleged failure to abide by FCRA strictures in providing notice to consumers and creating reports for employment purposes. Plaintiff and all Settlement Class Members have been injured in the same manner by this conduct, and compensation for these injuries is determined by a single damages scheme without regard to actual harm. Plaintiff has asserted claims that are typical of the other Class Members' claims in that Defendant's failure to provide proper notice to consumers and exclude stale information violated the FCRA. Since the injuries and

28

remedies of the Named Plaintiff and Class Members are the same, typicality is satisfied. *Kornberg*, 741 F.2d at 1337.

### d.   The Named Plaintiff and his Counsel adequately represent the Classes

The adequacy of representation requirement is satisfied if: (1) Plaintiff is represented by qualified and competent counsel; (2) Plaintiff's interests do not conflict with the interests of the proposed Class Members; and (3) Plaintiff has sufficient personal integrity to fulfill the role of class representative. *See Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718, 726 (11th Cir. 1987); *see also In re Checking Account*, 275 F.R.D. at 660 (finding adequacy requirement satisfied where plaintiffs had retained competent counsel and had vigorously represented the class members' interests). Plaintiff and his Counsel satisfy the adequacy requirement here.

First, Plaintiff's claims are co-extensive with those of the Settlement Classes, and Plaintiff seeks the identical relief that would be sought by all members of the proposed Classes. There is simply no conflict between Plaintiff's claims and those of the proposed Settlement Classes. The Named Plaintiff has agreed to assume the responsibility of representing the Settlement Classes,

including responding to discovery requests, testifying at a deposition or trial, and diligently pursuing this action in cooperation with this counsel. Plaintiff has taken his obligations to the Settlement Class seriously. (Dkt. No. 78-7, April 2, 2013 Declaration of Danny R. Teagle ¶¶ 7–12.) Nothing more is required.

Second, proposed Class Counsel has extensive experience and expertise in prosecuting complex class actions, including consumer and FCRA actions. (*See* Ex. 1, Caddell Decl. ¶¶ 7–10; Ex. 2, Declaration of Mara McRae ("McRae Decl.") ¶¶ 6–7; Ex. 3, Declaration of Leonard Bennett ("Bennett Decl.") ¶¶ 9–12.) In pursuing this litigation, Plaintiff has advanced and will continue to advance and fully protect the common interests of all members of the Classes.  Accordingly, Rule 23(a)(4) is satisfied.

## 2.    The Proposed Settlement meets the predominance and superiority requirements of Rule 23(b)(3)

The proposed Settlement Classes are ideally suited for certification under Rule 23(b)(3) because questions common to the Settlement Class members predominate over questions affecting only individual members, and the class-action device provides the best method for the fair and efficient resolution of the Settlement Class members' claims against the Defendant. When addressing the

propriety of Settlement Class certification, courts take into account the fact that a trial will be unnecessary and that manageability, therefore, is not an issue. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997).

### a.   Common questions predominate, making class treatment appropriate

Common issues predominate where these issues "ha[ve] a direct impact on every class member's effort to establish liability that is more substantial than the impact of individualized issues in resolving the claim or claims of each class member." *Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc.*, 601 F.3d 1159, 1170 (11th Cir. 2010). Even where some issues, such as calculating damages, may be individualized, common questions predominate when liability can be determined on a classwide basis. *Allapattah Services, Inc. v. Exxon Corp.*, 333 F.3d 1248, 1261 (11th Cir. 2003).

Liability here depends on classwide issues, which satisfies the predominance requirement. The same common questions relevant to the Rule 23(a)(2) analysis predominate here (*see supra*, Section III.C.1.b), including whether Defendant willfully failed to follow the FCRA with its conduct toward Class Members. *See In re Checking Account*, 275 F.R.D. at 660 (holding that predominance requirement

was satisfied where "common questions present a significant aspect of the case and can be resolved for all Settlement Class Members in a single adjudication"). Because the claims are being certified for purposes of settlement, there are no issues with manageability, and resolution of thousands of claims in one action is far superior to individual lawsuits and promotes consistency and efficiency of adjudication. *See* FED. R. CIV. P. 23(b)(3). For these reasons, final certification of the Settlement Classes is appropriate.

> **b.  Class treatment is superior to alternative methods of adjudication**

The Court should certify the Settlement Classes if it finds that a "class action is superior to other available methods for fair and efficient adjudication of the controversy." FED. R. CIV. P. 23(b)(3). In evaluating this rule, the court's "focus is not on the convenience or burden of a class action suit per se, but on the relative advantages of a class action suit over whatever other forms of litigation might be realistically available to the plaintiffs." *Klay v. Humana, Inc.*, 382 F.3d 1241, 1269 (11th Cir. 2004). Thus, if no alternative method, such as individual interventions or consolidation of individual lawsuits, would be fairer or more efficient, the superiority requirement is satisfied. *Id.*

Class treatment here will facilitate the favorable resolution of all proposed Class Members' claims. Given the number of Settlement Class Members and the multitude of common issues present, the class device is also the most efficient and fair means of adjudicating these claims. This notion of fair adjudication is particularly applicable here, as most Class Members likely first learned of a violation of their rights when they received the Notice in this case. Particularly in the settlement context, class treatment is superior to multiple individual suits or piecemeal litigation of nearly identical claims because it greatly conserves judicial resources and promotes consistency and efficiency of adjudication. *See Klay*, 382 F.3d at 1273 (finding superiority requirement met where class action offered significant efficiencies for the parties and the court). The superiority requirement is therefore satisfied, and the Court should finally approve the proposed Settlement.

## D.   The Proposed Notice Program Is Constitutionally Sound

"Rule 23(e)(1)(B) requires the court to 'direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise' regardless of whether the class was certified under Rule 23(b)(1), (b)(2), or (b)(3)." MANUAL § 21.312. Many of the same considerations govern both certification and settlement notices. In order to protect the rights of

absent class members, the Court must provide the best notice practicable to class members. *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811–12 (1985); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 174–75 (1974). "Rule 23 . . . requires that individual notice in [opt-out] actions be given to class members who can be identified through reasonable efforts. Those who cannot be readily identified must be given the 'best notice practicable under the circumstances.'" MANUAL § 21.311. Courts have long recognized that direct-mail notice "is ordinarily sufficient to notify class members who have been identified." *In re Checking Account*, 830 F. Supp. 2d at 1340 (finding that direct mail notice was sufficient to put class members on notice of the settlement).

On May 21, 2013, the Court-appointed Settlement Administrator, Tilghman & Co., sent each Class Member, by First Class Mail, the Court-approved notice letters for the Classes. (Dkt. No. 89, Tilghman Decl. ¶ 6.) Tilghman also created a website dedicated to the settlement, www.noticeclass.com/TeagleSettlement. (*Id*. ¶ 7.) The website contains documents pertinent to the case, a listing and description of key deadlines for Class Members (such as the opt-out and objection deadlines), and the date of the Final Approval hearing. (*See* www.noticeclass.com/TeagleSettlement, last visited July 11, 2013.)

The addresses Tilghman used for mailing of the Notices were taken from LexisNexis' records, which were updated using the U.S. Postal Service's change-of-address database. (Dkt. No. 89, Tilghman Decl. ¶ 4.) The 52 letters returned were remailed to forwarding addresses provided by the U.S. Postal Service. (*Id.* ¶ 8.) To date, only 15 of these remailed notices were returned as undeliverable. (*See id.*)

As the Notice program was executed precisely as the Court ordered at the preliminary-approval stage, Class Members received the best notice practicable under the circumstances. The Court should therefore conclude that due process is satisfied, and that the notice plan as carried-out meets the requirements of Rule 23.

**E.    The Court Should Award the Requested Class Representative Service Award, Plaintiff's Counsel's Reasonable Attorneys' Fees, and Plaintiff's Counsel's Expenses Reasonably Incurred**

In addition to finally approving the Settlement, Plaintiff also requests that the Court approve the proposed Class Representative service award, Plaintiff's Counsel's reasonable attorneys' fees, and Plaintiff's Counsel's requested costs and expenses reasonably incurred in prosecuting this case. All of these items are routinely awarded in class actions like this one, particularly where there is no opposition whatsoever, and each is reasonable under the circumstances.

### 1.    Plaintiff Teagle deserves the modest service award requested

In this District, as with most courts across the country, "[i]ncentive awards to class representatives are an accepted element of class action cases." *Hillis v. Equifax Consumer Servs., Inc.*, No. 104-cv-3400-TCB, 2007 WL 1953463, at *17 (N.D. Ga. June 12, 2007). Where, as here, the named plaintiff initiates the litigation, assists in the investigation of the case, takes the obligations of serving as a class representative seriously, and keeps up with the litigation, a reward for that participation is appropriate. *See id.* (approving award of $7,500 per class representative).

Here, as the Court recognized at the preliminary approval stage, an incentive award for Plaintiff Teagle is appropriate. As he set forth in his declaration in support of preliminary approval, Plaintiff Teagle chose to serve as the Named Plaintiff in this lawsuit after his counsel explained to him the responsibilities required. (Dkt. No. 78-7, Teagle Decl. ¶ 5.) Cognizant of those responsibilities, Plaintiff Teagle began this lawsuit with the intent to vigorously pursue it, for himself and the benefit of the Class Members he represents. (*Id.* ¶¶ 5–6.) He understands the theories of this lawsuit, kept abreast of the case's status, reviewed documents provided to him by his Counsel, and discussed with his Counsel aspects

of the case, discovery issues, and settlement negotiations. (*Id.* ¶¶ 7–9.) He also spent considerable time reviewing correspondence and documents in this case. (*Id.* ¶ 9.) In short, Plaintiff Teagle amply fulfilled his duties as Class Representative, and a modest service award of $5,000 is appropriate. *Hillis*, 2007 WL 1953464, at *17.

### 2. Counsel's fees and expenses should be awarded because they were reasonably incurred and meet the Eleventh Circuit's strictures for such awards

#### a. Counsel's fees are reasonable in relation to the result obtained, and should be paid

Per the Parties' agreement, Plaintiffs' Counsel seeks a payment of $350,000 for its attorneys' fees and expenses, an amount that will not reduce the recovery for Class Members. (Dkt. No. 78-8, Settlement Agmt. § 5.1.2.) Defendant does not oppose an award of this amount. (*Id.*) Plaintiffs' Counsel's accumulated lodestar for the case is approximately $440,072.50. (Ex. 1, Caddell Decl. ¶¶ 33–34; Ex. 2, McRae Decl. ¶ 18; Ex. 3, Bennett Decl. ¶ 15.) In addition, Counsel's expenses reasonably incurred in the case totals $9,454.31. (Ex. 1, Caddell Decl. ¶¶ 41–42; Ex. 2, McRae Decl. ¶ 22.) The total fee and expense request therefore is less than the lodestar and expenses reasonably incurred in pursuing this case. The Court

should conclude that the fees requested are reasonable and necessary, and grant Plaintiff's request in full.

The Court has broad discretion in awarding attorneys' fees. *Fraught v. Am. Home Shield Corp.*, 688 F.3d 1233, 1242 (11th Cir. 2011). The Eleventh Circuit has long endorsed fee awards in class action cases using either the percentage-of-the-fund or lodestar method of computation. *Camden I Condo. Ass'n, Inc. v. Dunkle*, 946 F.2d 768, 774 (11th Cir. 1991). Similarly, it has recognized that "[t]he majority of common fund fee awards fall between 20% to 30% of the fund." *Id.* In arriving at its award, the Court should consider multiple factors including:

> (1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and the length of the professional relationship with the client; (12) awards in similar cases.

*Camden I*, 946 F.2d at 772 n.3 (citing *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974)); *In re Sunbeam Sec. Litig.*, 176 F. Supp. 2d 1323, 1333 (S.D. Fla. 2001). These factors are not exclusive, as courts are instructed to also consider additional factors, such as the time required to reach a

settlement, reaction of other parties to the settlement or fees requested by counsel, any non-monetary aspects of the benefits to class members under the settlement, the economics of prosecuting the case as a class action, and any other pertinent factors that are unique to the particular case. *Camden I*, 946 F.2d at 775.

Counsel's requested fee and expense award here, paid directly by LexisNexis, totals $350,000. Whether considering it against Counsel's lodestar or as a percentage of the total relief for the Classes, it is reasonable. (Ex. 1, Caddell Decl. ¶¶ 34–35, 39.) As to the lodestar analysis, Counsel's hours total approximately 952.9, and the billing rates of the attorneys who worked on the case range from $425 to $875. (*Id.* ¶¶ 33–35; Ex. 2, McRae Decl. ¶ 18; Ex. 3, Bennett Decl. ¶ 15.) Paralegal time was billed at $150 and $250 per hour. (Ex. 1, Caddell Decl. ¶¶ 33–34; Ex. 3, Bennett Decl. ¶ 15.) As set forth more fully below, Counsel pursued the case as economically as possible, while still producing an excellent result for the Classes. Indeed, Counsel's lodestar will turn out to be approximately equal to the fee award, so the request would not contemplate a lodestar

enhancement. An examination of the factors set forth by the Eleventh Circuit supports the Court's granting of the requested fees.[5]

### i. Time and labor required, novelty of the issues, and skill required to perform the legal work

Since Plaintiff presented the Defendant with a strong case under the FCRA, settlement negotiations, once begun, quickly resulted in a settlement. (*See* Dkt. No. 78-2, Marchiando Decl. ¶ 12.) While the issues presented are not particularly novel, Plaintiff still faced an uphill battle because all of his claims depend upon a finding that Defendant willfully, as opposed to merely negligently, violated the FCRA. (*See* Dkt. No. 55 ¶¶ 57, 61); *see also* 15 U.S.C. §§ 1681n(a), 1681o(a). Key to the settlement's consummation therefore was convincing Defendant that Plaintiff had at least a valid enough willfulness claim against each to survive summary judgment. Since the Defendant agreed to settle on such favorable terms

---

[5] As the Eleventh Circuit requires examination of the *Johnson* factors whether the fee requested is based on a lodestar calculation or a percentage of the common fund created for the class, Plaintiff examines the requested fee in this case using both methods. *See In re Sunbeam*, 176 F. Supp. 2d at 1332–37 (applying *Johnson* factors to request for percentage-of-the-fund fee); *see also Loranger v. Steirheim*, 10 F.3d 776, 781 n.6 (11th Cir. 1994) (approving of use of *Johnson* factors in lodestar analysis). Plaintiff's analysis does not consider the following factors, as they are inapplicable here: time limitations imposed by the client or the circumstances; the "undesirability" of the case; and the nature and the length of the professional relationship with the client.

to the Classes, it follows that Plaintiff was successful in establishing that Defendant faced ample risk with further litigation.

Much of the groundwork for Plaintiff's willfulness claim was laid during Counsel's investigation before filing and early in the case. (*See* Dkt. No. 78-2, Marchiando Decl. ¶¶ 11–12.) After engaging in settlement negotiations and convincing the Defendant that Plaintiff had a strong case, Plaintiff then focused on confirming, through discovery, that his notions regarding Defendant's FCRA procedures were true and that the Class populations given by Defendant were accurate. (*Id.* ¶¶ 12–14.) In addition to the discovery formally produced earlier in the case, LexisNexis also provided confirmatory discovery regarding the programming issues that caused the errors with the notices and reports to Class Members, the discovery of those issues, and the fact that the issues were resolved in response to this lawsuit. (*See* Dkt. No. 78-3 (filed under seal).)

Throughout this process, Counsel aimed to conduct the most thorough investigation while cognizant of the amount of time being spent on such tasks. Accordingly, where possible, work was assigned to an associate attorney, as opposed to one of partner level, because of the associate's lower hourly billing rate. (Ex. 1, Caddell Decl. ¶ 30.) As such, Craig Marchiando, the primary associate

attorney with responsibility for this case, worked 526.8 of the 692.9 hours Caddell & Chapman billed to the case. (*Id*. ¶ 34.) Similarly, the Parties agreed to obtain testimony from the Defendant through written disclosures, further reducing fees and expenses. (*See* Dkt. No. 78-2, Marchiando Decl. ¶ 25; Dkt. No. 78-3 (filed under seal).) In addition, Counsel for the three Firms on Plaintiff's side coordinated their efforts to avoid the needless duplication of work. (Ex. 1, Caddell Decl. ¶ 43.) Counsel submits that this case could not have been pursued in a more economic manner, and the hours expended were reasonable and necessary under the circumstances. (*See id*. ¶¶ 35, 39.) Thus, although the case settled at the class-certification stage of litigation, effort was still required to confirm the settlement and establish that it was, in Counsel's opinion, fair, reasonable, and adequate for Class Members. Given the pre-filing and settlement investigations that Counsel undertook, these hours are eminently reasonable in light of the claims made and the benefits achieved for Class Members.

ii. *The preclusion of other employment, the customary fee in contingent cases, and the amount involved and the results obtained*

Taking this case prevented Plaintiff's Counsel from taking other work. (Ex. 1, Caddell Decl. ¶ 31.) As the Court is no doubt aware, class actions that settle

early in the process often require less discovery, but counsel is still bound to ensure that the settlement is within the range of reasonableness and can only do so by reviewing documents and insisting on other forms of discovery to confirm the fairness of the Settlement. Further, whether the classes at issue are small or large, the same amount of effort goes into creating and negotiating the proposed notice letters and other aspects of the settlement, while a similar level of research and briefing are required to support the settlement and present it to the Court for approval. While Plaintiff's Counsel approached this case with the hope of minimizing the hours that were spent in assuring that the settlement provided genuine benefits for the Classes, doing so still precluded Counsel from taking on other work. (*Id.*)

The Eleventh Circuit has recognized that attorneys who create a common fund for the benefit of a class should be paid based on a percentage of that fund. *Camden I*, 946 F.2d at 771 ("Attorneys in a class action in which a common fund is created are entitled to compensation for their services from the common fund, but the amount is subject to court approval."). Funds awarded in this way must be a reasonable percentage of the fund established for the class. *Faught v. Am. Home Shield Corp.*, 668 F.3d 1233, 1242 (11th Cir. 2011). While this is not strictly a

common fund case because LexisNexis is separately paying attorneys' fees, it is appropriate for the Court to assess Plaintiff's request as a percentage of the value created for the Classes. *See Pinto v. Princess Cruise Lines, Ltd.*, 513 F. Supp. 2d 1334, 1338 (S.D. Fla. 2007) ("Lawyers who recover a 'common fund' are entitled to reasonable attorneys' fees from the fund they created."); *Mashburn v. Nat'l Healthcare, Inc.*, 684 F. Supp. 679, 693 (M.D. Ala. 1988) ("The critical element in determining the appropriate fee to be awarded class counsel out of a common fund is the result obtained for the class through the efforts of such counsel."). That value, the potential payout to the Classes plus the award of attorneys' fees and expenses, totals approximately $1,342,500.

Here, twenty-six percent of the total value created is an appropriate award of attorneys' fees and expenses. The Settlement provides genuine, cash relief to Class Members without the need for them to prove actual harm, and despite the fact that—because the claims involve a lack of proper notice under the FCRA—many Class Members (if not all) were not aware of their claims at all until they received their Notice Letters. Further, this lawsuit has resulted in protections for future consumers, as Defendant corrected the programming issues that resulted in the errors with the subject notices and reports that will ensure FCRA compliance going

forward. (*See* Dkt. No. 78-3 (filed under seal).) Given that injunctive relief is generally regarded as unavailable under the FCRA, *Campos v. ChoicePoint, Inc.*, 237 F.R.D. 478, 482 n.8 (N.D. Ga. 2006), these practice changes add additional value to this Settlement. Counsel should therefore be compensated for creating such value for the Classes. Other courts have concluded that awards of thirty percent are reasonable, even in cases involving fee-shifting statutes such as the FCRA. *See, e.g.*, *Diaz v. Hillsborough County Hosp. Auth.*, No.8:90-CV-120-T-25B, 2000 WL 1682918 at * 20–21 (M.D. Fla. Aug. 7, 2000) (approving thirty percent of common fund in statutory-fee-shifting case); *see also Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291, 1300 (11th Cir. 1999) (approving fee award where the district court determined that the benchmark should be 30 percent and then adjusted the fee award higher based on the circumstances of the case).

Alternatively, when compared against Counsel's lodestar, the requested fee is eminently reasonable as well. The combined fee and expense award, $350,000, will be less than Counsel's accumulated lodestar and expenses. (Ex. 1, Caddell Decl. ¶¶ 33–34; Ex. 2, McRae Decl. ¶¶ 18, 24; Ex. 3, Bennett Decl. ¶ 15.) The lodestar figure is based on the reasonable rates of Plaintiff's Counsel, which have been approved in other consumer-protection class actions—including one in this

District and Division—in which Counsel has been involved. (*See* Ex. 1, Caddell Decl. ¶¶ 36–38 (collecting cases in which courts approved Firm's rates in class-action settlements).) The rates are also reasonable for the type of work performed by similar practitioners within this District. (*See id.*; Ex. 2, McRae Decl. ¶¶ 20–21.)

Courts generally agree that the contingent nature of a case justifies an enhancement of counsel's lodestar. *See Bowen v. SouthTrust Bank of Ala.*, 760 F. Supp. 2d 889, 899 (M.D. Ala. 1991) (noting the court and the Eleventh Circuit have concluded that Alabama courts awarded fees—in contingent cases under fee-shifting statutes—"at least twice as large as those normally paid in similar non-contingent cases"). While Plaintiff's Counsel certainly agrees with the precept, they do not request an enhancement here—they negotiated fees in an attempt to approximate their lodestar so that the request would be near the time they accumulated on the case. (*See* Ex. 1, Caddell Decl. ¶ 44.) The fact that no enhancement is requested, despite that fact that it would otherwise be available to Counsel, reinforces the conclusion that the requested fee is reasonable. *See Bowen*, 760 F. Supp. 2d at 899 (enhancing fee by 67% in ERISA case).

As noted, the results obtained are excellent in light of (1) need for Class Members to prove willful violations to obtain any monetary relief at all and

(2) Defendant's changes in business practices from discovery of the programming oversights that caused the violations at issue. Class Members will receive a portion of damages available to them under the statutory scheme, without regard to whether they incurred actual damages. Absent Counsel's dedication to investigating the case and reaching a valuable conclusion without delay or a significant outlay of attorney time and expenses, this case likely would have consumed more Court and Party resources without achieving a markedly better result for Class Members. Accordingly, an award of fees that is actually less than Counsel's lodestar for the case is appropriate.

### iii. *The experience, reputation, and ability of the attorneys and awards in similar cases*

Plaintiff's Counsel, nationally recognized class action practitioners, brought their significant, specialized reputation and skill to bear in this case. (*See* Ex. 1, Caddell Decl. ¶ 39; Ex. 2, McRae Decl. ¶¶ 6–7, 19; Ex. 3, Bennett Decl. ¶¶ 9–12.) Courts have repeatedly recognized the professionalism, ingenuity, and toughness with which Counsel approaches class action cases, and Counsel has in this case acted with utmost professionalism and skill, never sacrificing the goals of the Classes in favor of its own. (Ex. 1, Caddell Decl. ¶¶ 3–13.) Without the

participation of such competent counsel, it is doubtful that this case could have been settled on such excellent terms for the Classes with such a minimal outlay of attorney time as was achieved here. Courts have recognized that the efficiencies gained from having experienced counsel prosecuting the case should be rewarded rather than penalized:

> It is also clear that but for the expertise which plaintiffs' counsel had developed in prior litigation of this type, many more hours would have been expended in prosecuting this case. . . . It is ironic that less experienced counsel would have spent more time in discovery and in litigating the question of class certification, thereby elevating the lodestar figure. Certainly, it would be unfair to penalize plaintiffs' counsel for reducing the number of hours actually spent in preparing this matter for trial.

*In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 356 (N.D. Ga. 1993) (quoting *Bullock v. Adm'r of Estate of Kircher*, 84 F.R.D. 1, 17 (D.N.J. 1979)) (omission in original).

Even were the Court to examine the fee award as though this case was strictly a common-fund case, the fee award is reasonable. LexisNexis has committed to paying a maximum of 17,747 claims at $50 each and 701 claims at $150 each, for a total potential exposure of $992,500. (Dkt. No. 89, Tilghman Decl. ¶ 4, Dkt. No. 78-8 Settlement Agmt. § 5.2.) Adding the $350,000 payment

for attorneys' fees and expenses yields a total value for the Classes of $1,342,500. The $350,000 payment is twenty-six percent of that total. Courts considering fee requests in this Circuit have repeatedly awarded percentage-of-the-fund fees of thirty percent or greater. *See Pinto v. Princess Cruise Lines, Ltd.*, 513 F. Supp. 2d 1334, 1341–42 (S.D. Fla. 2007) (awarding fees of thirty percent of common fund and collecting Eleventh Circuit cases awarding fees of thirty percent and higher); *see also Elkins v. Equitable Life Ins. of Iowa*, No. CivA96–296–Civ–T–17B, 1998 WL 133741, at *35 (M.D. Fla. Jan. 27, 1998) (citing cases awarding thirty and thirty-one percent of common funds as fees). Accordingly, twenty-six percent of the total value to the Classes is an appropriate award of attorneys' fees under the facts of this case. This amount is less than thirty percent of the total potential relief available to Class Members, further emphasizing the reasonableness of the proposed fee. The Court should therefore conclude that this factor favors granting Plaintiff's fee request.

> ### iv.      The reaction of Class Members also favors granting the requested fee

Class Members' positive reaction to the Settlement further supports the granting of Counsel's fee request. The Parties are unaware of any objections to any

portion of the Settlement, including the requested attorneys' fees. (Dkt. No. 89, Tilghman Decl. ¶ 10; Ex. 1, Caddell Decl. ¶ 46.) As courts generally recognize that "[a] small number of objections indicates the support of the Class," zero objections certainly makes this point even stronger. *See Pinto*, 513 F. Supp. 2d at 1343 (concluding that the requested fee was justified where none of the 18,000 class members objected to it). The complete lack of objections here indicates that no Class Member has concluded that the fee is unreasonable or should be reduced. This factor likewise supports approving the requested fee.

In sum, the *Johnson* factors support granting the requested fee. While the case did settle at a relatively early stage of the litigation, the settlement resulted from Plaintiff's Counsel's thorough investigation of the claims and its complete review of confirmatory discovery in preparation for class certification (*see* Dkt. No. 78-2, Marchiando Decl. ¶¶ 8–9), both of which required the expenditure of at least a minimal amount of resources to complete. Plaintiff's Counsel conducted its investigation and review as economically as possible, and obtained a superior result—both in cash and non-monetary relief—for the Classes. The lodestar that Counsel accumulated is reasonable and necessary, and is based upon hourly rates that are customary to class-action practitioners with nationwide practices. Finally,

the lack of opposition to the requested fee further underscores the conclusion that the request is reasonable. The Court should therefore conclude that all of these factors favor granting the requested fee award.

### b. Counsel's expenses are reasonable and should be awarded

As with fees, courts generally award costs and expenses reasonably incurred by counsel pursuing the case. *In re Domestic Air*, 148 F.R.D. at 357 (awarding expenses necessarily and reasonably related to the prosecution of the case). Here, Plaintiff's Counsel's unreimbursed expenses are minimal, amounting to $9,454.31. (Ex. 1, Caddell Decl. ¶ 41; Ex. 2, McRae Decl. ¶ 22.) The expenses include items typically associated with litigation—photocopies, faxes, legal research, staff overtime, and one deposition. (Ex. 1, Caddell Decl. ¶¶ 41–42; Ex. 2, McRae Decl. ¶ 23.) All of these expenses were necessary and incurred in pursuit of this lawsuit with an eye toward minimizing costs. (Ex. 1, Caddell Decl. ¶¶ 30, 41–43; Ex. 2, McRae Decl. ¶ 23.) For example, confirmatory discovery was obtained through admissions from LexisNexis, rather than by more expensive means such as deposition. (*See* Dkt. No. 78-3 (filed under seal).) The Court should therefore order these expenses reimbursed as a portion of the $350,000 total paid to Plaintiff's Counsel.

## IV.      CONCLUSION

For the reasons stated above, the Court should (1) finally certify the Settlement Classes and appoint Danny R. Teagle and his Counsel to represent the Classes; (2) finally approve the Settlement Agreement, including the settlement payments to the Classes, service award to Class Representative Teagle, and the attorneys' fees and costs payment to Class Counsel; (3) dismiss with prejudice, on behalf of all Class Members who have not excluded themselves from the Settlement, all claims against Defendant asserted in this case; and (4) enter all other orders the Court deems appropriate under the circumstances.

Dated:  July 19, 2013.


/s/   Michael A. Caddell
Michael A. Caddell (*pro hac vice*)
Cynthia B. Chapman (*pro hac vice*)
Craig C. Marchiando (*pro hac vice*)
**CADDELL & CHAPMAN**
1331 Lamar, Suite 1070
Houston TX 77010
(713) 751-0400
(713) 751-0906 (fax)

Mara McRae
Georgia Bar No. 499138
**MᴄRᴀᴇ Bʀᴏᴏᴋs Wᴀʀɴᴇʀ LLC**
1175 Peachtree Street, Suite 2100
Atlanta, Georgia  30361
(404) 681-0700
(404) 681-0780 (fax)

Leonard A. Bennett (*pro hac vice*)
**Cᴏɴsᴜᴍᴇʀ Lɪᴛɪɢᴀᴛɪᴏɴ Assᴏᴄɪᴀᴛᴇs, P.C.**
763 J. Clyde Morris Blvd., Suite 1A
Newport News, VA 23601

***Counsel for Plaintiff***

## <u>CERTIFICATE OF COMPLIANCE</u>

The foregoing document complies with the typeface requirements of Local Rule 5.1C and the type style requirements of Local Rule 5.1C(3) using Times New Roman 14 point font.

/s/  Michael A. Caddell
Michael A. Caddell (*pro hac vice*)
Cynthia B. Chapman (*pro hac vice*)
Craig C. Marchiando (*pro hac vice*)
**CADDELL & CHAPMAN**
1331 Lamar, Suite 1070
Houston TX 77010
(713) 751-0400
(713) 751-0906 (fax)

***Counsel for Plaintiff***

54

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 19, 2013, a copy of the foregoing document was electronically filed with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to the following:

James F. McCabe (*pro hac vice*)
MORRISON & FOERSTER LLP
425 Market St., 32nd Floor
San Francisco, CA 94105
Telephone: (415) 268-7000
Facsimile: (415) 268-7522
jmccabe@mofo.com

Jill A. Pryor
Alison B. Prout
BONDURANT, MIXSON &
ELMORE, LLP
3900 One Atlantic Center
1201 West Peachtree St. N.W.
Atlanta, GA 30309
Telephone: (404) 881-4100
Facsimile: (404) 881-4111
pryor@bmelaw.com
prout@bmelaw.com

***Counsel for Defendant***
***LexisNexis Screening Solutions, Inc.***

/s/  Michael A. Caddell
Michael A. Caddell

***Counsel for Plaintiff***