EXHIBIT 1

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| DANNY R. TEAGLE and JESUS SALAZAR, JR., individually and on behalf of all others similarly situated, | § § § § § | |
| Plaintiffs, | § § | |
| v. | § § | No. 1:11-CV-1280-RWS-JSA |
| LEXISNEXIS SCREENING SOLUTIONS, INC., formerly known as CHOICEPOINT'S WORKPLACE SOLUTIONS, INC., | § § § § § § | |
| Defendant. | § § | Jury Trial Demanded |

## DECLARATION OF MICHAEL A. CADDELL
## IN SUPPORT OF MOTION FOR FINAL APPROVAL
## OF CLASS ACTION SETTLEMENT AND RELATED ORDERS

I, Michael A. Caddell, declare as follows:

1.      My name is Michael A. Caddell. I am over 21 years of age, of sound

mind, capable of executing this Declaration, and have personal knowledge of the

facts stated herein, and they are all true and correct.

EXHIBIT 1

EXHIBIT 1

2.     I am one of the attorneys working on behalf of the Plaintiffs and the putative Class in the above-styled litigation, and I am an attorney and principal of the law firm of Caddell & Chapman.

## Caddell & Chapman

3.     Caddell & Chapman, a five-lawyer firm with a strong support staff, has an outstanding record representing primarily plaintiffs in complex litigation across the United States. I am a past co-recipient of the Public Interest Award from The Trial Lawyers for Public Justice Foundation and have been named "Impact Lawyer of the Year" by *Texas Lawyer* magazine. Caddell & Chapman's other named partner, Cynthia Chapman, who is also working on behalf of the Class in this matter, has been named by the *National Law Journal* as one of the "Top 40 Lawyers under 40 in America" and one of the "Top 50 Women Litigators in America." Both Cynthia Chapman and I have been named by *LawDragon* as two of the "500 Leading Plaintiffs' Lawyers in America."

4.     Caddell & Chapman has worked hard to attain a strong reputation for integrity and excellence,[1] even while pursuing difficult and sometimes

---

[1]  Texas Monthly has named each of Caddell & Chapman's lawyers either Texas Super Lawyers or Texas Rising Stars. Both Cynthia Chapman and I have been named Texas Super Lawyers in 2003, 2004, 2005, 2006, 2007, 2008, 2009, 2010, 2011, 2012, and 2013.

EXHIBIT 1

EXHIBIT 1

controversial cases. As Federal District Judge Royal Ferguson noted during a remand hearing in 2002, "Mr. Caddell, you and your office have a gold-plated reputation as good and thorough and thoughtful lawyers."[2] As United States Bankruptcy Judge Alan H. W. Shiff in Connecticut noted in 2003 during a contested motion to appoint Michael Caddell as Special Counsel to the Britestarr Bankruptcy Estate, "I think he's got a national reputation he's competent . . . . Mr. Caddell appeared before the Court and my recollection is that he comported himself very well."[3] As Steven Mackey from the Office of the United States Trustee, Region 2, for the District of Connecticut commented in the same hearing, "Mr. Caddell is more than competent, he is a pugnacious bulldog and where there is [sic] grounds to make a recovery he usually does."[4] "Where the fire is the hottest people tend to get scorched once in a while, and Mr. Caddell takes cases where the fire is as hot as it gets."[5]

---

[2] *Bellorin v. Bridgestone/Firestone, Inc.*, Cause No. P-01-CA-034, United States District Court, Western District of Texas, Pecos Division, Transcript of March 5, 2002 at 9, ll. 22-23. Instead of burdening the Court with copies of the transcripts and orders referenced in this personal statement, copies or excerpts of these documents will be provided upon request.

[3] *In re: Britestarr Homes, Inc.*, Cause No. 02-50811, United States Bankruptcy Court, District of Connecticut, Transcript of June 3, 2003 at 9, 14.

[4] *Id.* at 12-13.

[5] *Id.* at 12.

EXHIBIT 1

EXHIBIT 1

5.      Even while representing its clients zealously, however, Caddell & Chapman have maintained an excellent reputation as ethical lawyers. Ethics author and Professor Geoffrey Hazard recently noted, having "worked with lawyers" at "Caddell & Chapman . . . over the years in various matters," that Caddell & Chapman's lawyers "have consistently demonstrated the most proper ethical standards, including those applicable in class suit litigation," and that their conduct "exemplifies . . . high ethical concern."[6]

6.      Caddell & Chapman attorney Craig C. Marchiando is also working on behalf of the Class in the above-styled litigation. Mr. Marchiando is a class-action litigator with more than seven years of experience and he has been part of the Caddell & Chapman team in multiple national class actions. Mr. Marchiando is a 2004 graduate of South Texas College of Law, with honors, and a 1991 graduate of Texas Tech University. He is licensed to practice law in Texas and California, and is honored as a Texas Monthly "Rising Star" in class actions and mass torts for 2013. He has been admitted to practice in several Federal courts on a *pro hac vice* basis.

---

[6]  Hazard Declaration, filed in *White v. Experian Information Solutions, Inc.*, Case No. 05-CV-1070 DOC; In the U.S. Dist. Ct., Central Div. California, ECF Dkt. No. 605-6, Jan. 4, 2010.

EXHIBIT 1

EXHIBIT 1

## **Caddell & Chapman's Class Action Experience**

7.      Caddell & Chapman's typical role in class action litigation is as either lead or co-lead counsel (or in another leadership position). For example, past cases in which Caddell & Chapman and I have served in such a role include the Polybutylene National Class Action Litigation in Tennessee, Texas, and California (Cox v. Shell)[7], in which over $1 billion was recovered for the class (I was Co-Lead Counsel and served throughout the settlement process as Chairman of the Board of the Consumer Plumbing Recovery Center, the entity responsible for administering the settlement, which completely replumbed over 320,000 homes across America at no cost to individual homeowners); *In re: Sulzer Hip Prosthesis and Knee Prosthesis Liability Litigations*[8] in Ohio, another $1 billion recovery for a national class (I was Special Counsel to the Plaintiffs' Steering Committee and part of the six-lawyer team which negotiated the initial $750 million class settlement with Sulzer); *Hotchkiss v. Little Caesar Enterprises*,[9] a national class action in Texas and Michigan which resulted in a settlement valued at $350 million and the complete restructuring of the Little Caesar's franchise (I was Lead

---

[7] Civil No. 18,844, Obion County Chancery Court, Tennessee.
[8] Cause No. 1:01-CV-9000 (MDL Docket No. 1401), United States District Court, Northern District of Ohio, Eastern Division.
[9] C.A. No. 99-CI-16042, District Court of Bexar County, Texas.

EXHIBIT 1

EXHIBIT 1

Counsel); and *In re Hyundai and Kia Horsepower Litigation*,[10] a national class action in California that made available to the class roughly $125 million in cash and/or debit cards (I was Co-Lead Counsel).

8.     In the last several years alone Cynthia Chapman and I were named as Class Counsel in *Elihu, et al. v. Toshiba*, a national class action settlement in California which provided extended warranties and other relief for over 860,000 purchasers of Toshiba laptop computers (Caddell & Chapman was characterized by Toshiba's expert, Harvard Professor William Rubenstein (frequent class-action commentator and sole author of *Newberg on Class Actions*), as "experienced" and "skilled class action attorneys," and I was acknowledged as a "nationally-known plaintiffs' attorney"[11]), Ms. Chapman was named as Co-Lead Counsel in a national class action settlement in California involving some 80,000 purchasers of Nissan's 350Z, and I was named Lead or Co-Lead Counsel in six national class action settlements:  (1) *White/Hernandez v. Experian, Equifax, and Trans Union*, FCRA injunctive-relief settlement approved on August 19, 2008, by Federal District Judge David Carter (who characterized the settlement as a "home run," "superb,"

---

[10]   Case No. 02CC00287, Superior Court of Orange County, California.

[11]   Rubenstein Declaration, Dec. 4, 2009, *Elihu v. Toshiba Am. Info. Sys., Inc.*, Case No. BC328556; in the Superior Ct of Calif., Los Angeles County–Central District.

EXHIBIT 1

EXHIBIT 1

"an incredible accomplishment," and a "substantial benefit for the public," and referred to the "very talented plaintiffs' counsel that ethically and honestly" represented the class) in Orange County, California, which will benefit millions of consumers emerging from Chapter 7 bankruptcy; (2) *Williams v. LexisNexis Risk Management*, a $22 million FCRA settlement approved June 25, 2008, by Federal District Judge Robert Payne in Richmond, Virginia; (3) *Hardy v. Hartford*, a settlement providing injunctive and monetary relief to a nationwide class of Hartford insureds with respect to the payment of General Contractor's overhead and profit on property damage claims, approved by Judge Bury of the Federal District Court of Arizona on June 18, 2008; (4) *In re Trans Union Corp. Privacy Litigation*, Case 1:00-cv-04729, MDL Docket No. 1350, N.D. Illinois, one of the largest class actions in history including more than 190 million class members, where the settlement was approved by Judge Robert Gettleman on September 17, 2008, and prominent class action expert Professor Geoffrey Miller stated "[h]aving worked closely with [Caddell & Chapman], I can also attest that they are among the finest class action attorneys I have been privileged to know during my two decades of experience in this field of law. They not only possess excellent analytical and rhetorical skills, but—more importantly—displayed remarkable

EXHIBIT 1

EXHIBIT 1

qualities of judgment, imagination and persistence;" (5) *Williams Ambulance et al. v. Ford Motor Co.*, a settlement that obtained final approval from Federal District Judge Marcia Crone on July 2, 2009 in the Eastern District of Texas, in which the owners of some 20,000 defective ambulances were eligible to obtain substantial compensation from Ford in the form of cash, extended warranties, and enhanced service; and (6) *In re Navistar Diesel Engine Products Liability Litigation*, No. MDL 2223 ("Ford 6.0 MDL"), pending in the Northern District of Illinois, in which the court has just approved a nationwide class action settlement providing compensation to over one million purchasers of vehicles equipped with Ford 6.0L diesel engines. My partner Cynthia Chapman served on the Plaintiffs' Steering Committee and as a Co-Chair Liaison of the Law Committee in *In re: Medtronic, Inc., Implantable Defibrillators Products Liability Litigation*, an MDL proceeding (Case No. MDL-1726) in the United States District Court for the District of Minnesota, in which a settlement of over $100 million was approved.

9.     Caddell & Chapman's current docket includes some 20 national and state class actions around the United States.  In most cases, Caddell & Chapman is either Lead or Co-Lead Counsel. For example, Caddell & Chapman is Co-Lead counsel in *Berry, et al. v. LexisNexis Risk & Information Analytics Group, Inc.*,

EXHIBIT 1

EXHIBIT 1

No. 3:11-cv-00754, pending in the Eastern District of Virginia, in which Caddell & Chapman recently negotiated, and the court preliminarily approved, a national class settlement providing injunctive and monetary relief under the Fair Credit Reporting Act ("FCRA"). Caddell & Chapman is also Lead Counsel in a case against two major beverage manufacturers which resulted in a settlement for a nationwide class of consumers. The settlement obtained final approval on August 31, 2012, in Los Angeles Superior Court. Caddell & Chapman is Co-Lead Counsel for a class of Comerica Bank account holders in a case involving improper overdraft charges pending in the Southern District of Florida.  On August 10, 2012, Caddell & Chapman prevailed in its efforts to certify a class in that case.  Finally, Caddell & Chapman is Lead Counsel for a nationwide class of persons insured by Farmers Group in a case pending in the Central District of California, in which a tentative settlement has been achieved. Most recently, in 2012, Caddell & Chapman led the plaintiffs' team in obtaining—over the defendants' opposition—certification of two classes of consumers in California, Florida, and New York in *Keegan, et al. v. American Honda Motor Company, Inc.*, No. CV 10-09508 MMM (AJWx) (C.D. Cal.). That case involves defective suspension components that caused premature tire wear in tens of thousands of Honda Civic cars. Soon after the

EXHIBIT 1

EXHIBIT 1

Keegan court certified the classes and plaintiffs prevailed on Honda's request to the Ninth Circuit for interlocutory review of the certification order, the parties agreed to a settlement which was granted preliminary approval by the court on March 15, 2013.

10.     I recently completed my service as Lead Counsel in *In re Ford Motor Co. Speed Control Deactivation Switch Products Liability Litigation*, an MDL proceeding (Case No. MDL-1718) pending in the Eastern District of Michigan, where my firm took the lead role in facilitating a double-tracked, multi-party mediation that resulted in more than 100 settlements of cases involving vehicle fires. I am also lead or co-lead counsel in numerous other national or state class actions against, among others, Allstate, State Farm, Farmers, Nissan, Honda, and Volvo. Cynthia Chapman and other members of Caddell & Chapman are serving in leadership positions in various other state and/or national class actions around the United States.

11.     While Caddell & Chapman's primary focus in the area of class actions has been as lead counsel for a putative or certified class, it has on occasion represented objectors with respect to proposed settlements that appeared abusive or defective. Since 2001, Caddell & Chapman has represented objectors in nine

EXHIBIT 1

EXHIBIT 1

matters with respect to proposed settlements. In several cases, Caddell & Chapman was lead or co-lead counsel for most or all of the objectors' counsel. In *Clark v. Equifax Information Services, Inc.*,[12] the district court refused to approve a proposed settlement after a two-day contested hearing in which I presented an expert and cross-examined several witnesses, including experts, advanced by the settlement proponents. Ultimately, after the settlement was modified with Caddell & Chapman's participation and assistance, the court approved the modified settlement and noted that "the involvement of Objectors' Counsel [which were led by Caddell & Chapman] aided in improving the final settlement terms," "the value to the class has . . . clearly been improved through the modifications to the Stipulation[s] of Settlement," and "Objectors' Counsel [for whom I served as Lead Counsel] . . . contributed to the final successful settlements."[13]

12.     Similarly, in *In re Hyundai and Kia Horsepower Litigation*, Caddell & Chapman, joined by many firms across the country, successfully objected to a proposed coupon settlement and convinced a state district court in Texas to

---

[12] *Franklin E. Clark, et al. v. Equifax Information Services, Inc.*, No.8:00-1218-22, United States District Court for the District of South Carolina, Anderson Division. There were two other related cases as well, Case Nos. 8:00-1217-22 and 8:00-1219-22.

[13] *Id.*, Order of April 20, 2004, at 33 nn.34-35; 34.

EXHIBIT 1

# EXHIBIT 1

*withdraw* preliminary approval for that settlement.[14]   Ultimately, Caddell &

Chapman, as Co-Lead Counsel, obtained a vastly improved settlement which was

submitted to and ultimately approved by the Superior Court in Orange County,

California, Judge Stephen J. Sundvold, presiding. In approving the settlement,

Judge Sundvold commented that it was "a tremendous accomplishment," "you've

done a terrific job," and the settlement "is as fair and reasonable as could have

been arrived at."[15] In four of the other cases in which Caddell & Chapman has

represented objectors, settlement modifications were ultimately approved by the

trial court and either affirmed on appeal or became final without appeal. In several

of those as well, the court or opposing counsel specifically noted the contributions

of the objectors led or represented by Caddell & Chapman.[16]

---

[14]   *Hermie Bundick, et al. v. Hyundai Motor Am.*, Cause No. B-168,410, 60th Judicial District of Jefferson County, Beaumont, Texas.

[15]   *In re Hyundai and Kia Horsepower Litigation*, Case No. 02CC00287, Superior Court of Orange County, California, Transcript of June 16, 2004 at 33-34, 43. The court's comments were premised on a claims rate of 15% to 20%, and the final claims rate was 19.2%.

[16]   *See, e.g., In re Wireless Tel. Federal Cost Recovery Fees Litig.*, Case No. MDL 1559, Master Case No. 4:03-md-01559, United States District Court for the Western District of Missouri, Western Division, Order dated July 8, 2004 at 4 (objectors represented by Michael Caddell and Ken Nelson "contributed significantly more to the settlement [than another group of objectors] and several of the suggestions [they] made were incorporated into the final settlement."); *Terri Shields, on Behalf of Herself and All Others Similarly Situated v. Bridgestone/Firestone, Inc.*, Cause No. B-170,462, 172nd Judicial District Court of Jefferson County, Texas, Plaintiff's Unopposed Motion for Entry of Order Supplementing Record, dated March 31, 2005, at 2 ("Plaintiff recognizes that the resolution of the objections to the original settlement is due to the efforts of many counsel for objectors, including, but not limited to, Mitchell A. Toups, Mike Caddell . . . . Many objector counsel, including the aforementioned, worked constructively with class counsel and counsel for Defendants to achieve the above-stated results." Caddell & Chapman's fees in *Shields* were all donated to charity.

# EXHIBIT 1

EXHIBIT 1

13.     In addition to my leadership roles in various class actions, I have also written about class action issues and have been invited to speak at class action and other CLE seminars. For example, just since 2009 I have co-authored (with Craig Marchiando):  "Issues Particular to Consumer Finance Class-Action Settlements," in *The Review of Banking & Financial Services*, Vol. 25, No. 9, September 2009; "Effective Approaches to Class Action Settlements," in the 14th Annual Consumer Financial Services Litigation Institute PLI Course Handbook Series Number B-1728, March 2009; and "Recent Developments in Class Action Certification and Settlement," in the 15th Annual Consumer Financial Services Litigation Institute PLI Course Handbook Series Number B-1789, February 2010, and have been a panelist on class action issues at both the 14th and 15th Annual Consumer Financial Services Institutes sponsored by the Practising Law Institute in New York and Chicago in 2009 and 2010.

### Caddell & Chapman's Trial and Complex Litigation Experience

14.     Caddell & Chapman's trial experience, which includes more than 50 jury trials and hundreds of evidentiary hearings, is germane to the appointment of Class Counsel in this matter. It is important for the Defendants to know that Plaintiffs' Counsel has extensive trial experience and can competently try a case.

EXHIBIT 1

# EXHIBIT 1

Indeed, Caddell & Chapman has tried numerous complex cases (and evidentiary hearings) against the Nation's top defense firms to a successful conclusion. In March 2006, Cynthia Chapman and I completed a complex, hotly contested five-week trial against ExxonMobil in which the jury awarded Caddell & Chapman's client $33.6 million[17]—ultimately, rather than pursuing an appeal, Exxon Mobil settled the matter. Notably, ExxonMobil's trial counsel at the time of trial was President-Elect of the American College of Trial Lawyers.

 15. In August 2008 we recovered $9 million in consent judgments after trial commenced in federal district court in McAllen, Texas, which judgments were paid in full plus interest at 8.25% following a contested evidentiary bankruptcy hearing in Jackson, Mississippi, in January 2010 (the total recovery was $10,084,000).[18] In July 2009, I served a lead counsel for the Park Memorial Homeowners' Association against Lexington Insurance Company seeking compensation for a 105-unit condominium project that had been declared uninhabitable by the City of Houston due to structural concerns. The case settled for a confidential amount—but only after we had successfully argued and prevailed

---

[17] *Tetco v. ExxonMobil Corp.*, Cause No. 2003-Cl-04424, 73rd Judicial District of Bexar County, Texas.

[18] *Ezequiel Reyna et al v. Michael J. Miller, et al.;* Case No. M-05-006; In the United States District Court for the Southern District of Texas, McAllen Division.

# EXHIBIT 1

EXHIBIT 1

over some 15 motions for summary judgment, *Daubert* motions, and motions in limine, and only one day before jury selection was to commence.[19]

16.      In 2011 Caddell & Chapman settled claims against the soils engineer for a $100 million, 31-story condominium tower on South Padre Island that earned the unenviable world record for the tallest reinforced-concrete structure ever imploded when, shortly after the building was "topped-out," it began differentially settling into the sand, causing columns to blow out, severe structural cracking, and enormous floor deflection.[20]  Again, the settlement occurred after successful appellate briefing at the Texas Supreme Court and jury selection at trial.[21]

17.      In 2012, Caddell & Chapman led a group of four firms pursuing False Claims Act claims in a *qui tam* case against DaVita, the nation's second-largest dialysis-treatment provider. During the course of the case, Caddell & Chapman took more than 40 depositions, reviewed hundreds of thousands of pages of documents, and briefed dozens of motions—from discovery to dispositive—and

---

[19]   *Park Memorial Condominium Ass'n, Inc. v. Lexington Ins. Co.*; Cause No. 2007-38187, 133rd Judicial District Court of Harris County, Texas.

[20]   *Ocean Tower, L.P., et al. v. Raba-Kistner Consultants, Inc. et al.*; Cause No.2008-06-3619-E; 357th District Court of Cameron County, Texas.

[21]   While the terms of various settlements are confidential, public records reflect there has been a complete release of $75 million in lenders' liens on the property, and Caddell & Chapman's client retains ownership of the property after the demolished tower has been removed.

EXHIBIT 1

EXHIBIT 1

was victorious every time. The case settled for $55 million paid to the United States and a confidential amount for attorneys' fees.

### Past Recoveries

18.    Since 1996, Caddell & Chapman has obtained more than 60 recoveries valued at $1 million or more, and more than 20 recoveries that exceeded $10 million. The value of the Firm's total recoveries in that time total more than $3.0 billion. To further illustrate the depth and breadth of Caddell & Chapman's experience and versatility, the following is a list of some of the cases in which Caddell & Chapman served as lead counsel and the recoveries made in each of these cases (some of which are identified by case type and others of which are identified by case style):  (1) C.A. No. 2000-CI-17169; *Maria Dolores Rodriguez-Olvera v. Salant Corporation, et al.*, $30 million settlement during trial—negligence—forum non conveniens—choice of law—federal jurisdiction—bankruptcy—bus accident in Mexico—14 deaths—Maquiladora workers; (2) C.A. No. 2003-CI-04424; *Tetco, et al. v. ExxonMobil, et al*, $33.6 million jury verdict—breach of contract, fraud; (3) C.A. No. —95-245; *Anthony R. Alvarez, et al. v. Little Caesar Enterprises, Inc., et al.*, $14.9 million jury verdict—breach of contract, tortious interference—restaurant franchisee versus national franchisor;

EXHIBIT 1

EXHIBIT 1

(4) No. 95-27280; *Douglas E. Moore and Toyota Town, Inc. v. Gulf States Toyota, Inc., Toyota Motor Sales, U.S.A., Inc., Jerry Pyle, & John Bishop*, $7.5 million verdict—fraud, breach of contract/franchise agreement—automobile dealership; (5) $23.4 million—product liability—*forum non conveniens*; (6) No. 93-062030; *Thomas E. Meadors, et al. v. Gen. Motors, et al.*, $7 million—product liability—motor vehicle—death, personal injury; (7) *Sierra Club v. Crown Central Petroleum*, $2.5 million—first private citizen suit in Texas under Clean Air Act; settlement achieved after successful appeal to Fifth Circuit Court of Appeals; (8) *PB/Class*, $1.091 billion—national class action—products liability—DTPA—polybutylene pipe and fittings; (9) *Dow Chemical Co., et al v. Miller Pipeline Services*, successfully defended Miller Pipeline Services Co. at jury trial against a $7 million suit filed by Dow Chemical Co. and Dow Pipeline Co. that alleged price-fixing, patent misuse and attempted monopolization; (10) $14.0 million—breach of fiduciary duty and legal malpractice—major New York law firm; (11) $15.7 million—industrial accident—injured workers; (12) $78.4 million subordination of secured debt plus $3.8 million in payments—special counsel to bankruptcy trustee—fraud, lender liability, equitable subordination—conspiracy—international bank; (13) $18.2 million debt/claims withdrawn and released plus

EXHIBIT 1

EXHIBIT 1

$500,00 payment—special counsel to bankruptcy trustee—breach of contract, bailment, theft—oil terminalling facility; (14) $20 million subordination of secured debt plus payments totaling $1.0 million—special counsel to bankruptcy trustee— fraud, lender liability, breach of fiduciary duty, director's liability, D&O coverage—foreign bank, director, D&O insurer; (15) $1.7 million—national class action—price fixing conspiracy—metal building insulation industry; (16) $22.5 million subordination of secured debt plus $8.0 million payment—breach of fiduciary duty, director's liability—oil company; (17) $107.5 million subordination of secured debt plus $2.5 million payment—fraud, lender liability—conspiracy— foreign banks; (18) $2.0 million—product liability—helicopter crash—Mexico; (19) $8.0 million elimination of priority debt plus 40% of Texas corporation— national class action—securities fraud, breach of fiduciary duty; (20) $2.6 million—trade secrets—commercial defamation; (21) $5 million—toxic tort— sulphur dioxide, asbestos; (22) $13.1 million -products liability—DTPA—1500 homes—polybutylene pipe and fittings; (23) $6.25 million—product liability— motor vehicle—single death; (24) $2.85 million—breach of contract—account mismanagement—national banks; (25) $4.3 million—commercial litigation— intellectual property—fraud, trade secrets, misappropriation; (26) $12.1 million—

EXHIBIT 1

EXHIBIT 1

national class action—consumer fraud; (27) $22.5 million—insurance bad faith—CGL policy; (28) $7 million—insurance bad faith—crime bond; (29) $12 million—insurance bad faith—CGL policies—(underlying case: toxic exposure); (30) $5 million—insurance bad faith—CGL policies—(underlying case: toxic exposure); (31) $10.0 million—breach of fiduciary duty, director's liability, family trusts; (32) $5.1 million—trucking accident; (33) $2.125 million—toxic exposure—2,4-d, dioxins; (34) $5.05 million (including $1.05 million in post-judgment interest) after $4.0 million jury verdict upheld on appeal—closed head injury; (35) $3.5 million—trucking accident; (36) $6 million—toxic exposure—chlordane; (37) $2.5 million—national class action—consumer fraud; (38) $4.15 million—product liability—vehicle fire; (39) $1.5 million—Trident submarine base—government contracts claim; (40) $4 million settlement one day after $6.25 million jury verdict—commercial litigation—deceptive trade practices; and (41) $3.25 million claim successfully defended at trial—take-nothing judgment entered—$600,000 judgment awarded firm's client on counterclaim—commercial litigation—lender liability.

EXHIBIT 1

EXHIBIT 1

### ***Pro Bono* Litigation**

19.     Cynthia Chapman and I are also proud of our *pro bono* litigation efforts, including class litigation. For example, on a *pro bono* basis, Caddell & Chapman represented, as Lead Counsel for a coalition of public interest groups, Hurricanes Katrina and Rita victims in a national class action lawsuit against the Federal Emergency Management Agency (FEMA). The lawsuit, in federal district court in Houston, alleged that FEMA's mishandling of its housing assistance programs violated federal laws and regulations. In a contested evidentiary hearing involving several witnesses, other lawyers from Caddell & Chapman and I persuaded the court to issue a preliminary injunction against FEMA compelling the agency to provide assistance with hurricane victims' utilities as well as base rent. In what lawyers from the Public Interest Law Project of Oakland, California, termed "a significant victory for evacuees," the district court found a "clear entitlement" that FEMA was required to provide assistance with utilities under applicable statutes and regulations, and FEMA's failure to comply with these mandates endangered the victims' ability to remain in livable housing. While the district court's injunction was subsequently overturned by the Fifth Circuit Court of Appeals, FEMA made several concessions to the Hurricane victims in the

EXHIBIT 1

EXHIBIT 1

interim, essentially conceding the relief sought by the lawsuit, as noted by Houston's then-Mayor, Bill White, who stated that Caddell & Chapman "was of tremendous help to the Katrina evacuees in battling with FEMA."[22]

20.    For further information concerning our firm's experience and expertise, the Court is referred to our website (www.caddellchapman.com).

### The Settlement of This Litigation

21.    As described above, my co-counsel, my firm, and I have the experience and ability to zealously and competently pursue this litigation on a classwide basis.

22.    We are willing to and have devoted the time and resources necessary to pursue this case through to resolution and have already expended considerable time and effort in researching the legal and factual issues relevant to this litigation, evaluating potential claims and defenses, drafting pleadings, and conducting the discovery necessary to confirm that the settlement is in the best interest of the Class.

23.    A settlement which provides cash awards of $50 or $150 per individual is, in my opinion, an excellent result. The Settlement provides genuine

---

[22] October 22, 2009 email from Mayor Bill White to Michael A. Caddell and Houston City Attorney Arturo Michel.

EXHIBIT 1

EXHIBIT 1

cash relief which Class Members may spend however they choose, and it eliminates the Parties' having to litigate the matter further to achieve what likely would be the same or a similar result.

24.     Such a benefit is excellent here in light of the challenges posed by further litigation. Since he claims only statutory damages for himself and the Classes, Plaintiff must show that LexisNexis willfully violated the FCRA. Making such a showing would be particularly difficult, since LexisNexis has explained that the two FCRA violations at issue—the late arrival of Plaintiff's 1681k notice letter and the inclusion of obsolete criminal-history information in his LexisNexis report—were caused by oversights in the programming of LexisNexis' automated search and letter-generating programs.

25.     Thus, Plaintiff would be faced with the arduous task of convincing the Court first, then—if the Court rules in Plaintiff's favor on a dispositive motion—a jury, that these programming oversights were at least reckless under prevailing FCRA authority. With the strength of LexisNexis' arguments against willfulness, I am of the opinion that it is better to settle this case than to attempt to prove willfulness under these facts.

EXHIBIT 1

EXHIBIT 1

26.     Were the Parties to litigate the case and Plaintiff unable to prove willfulness, he would be left to prove only his actual damages, an amount likely smaller (if actual damages are even present) than that he will recover as a result of the Settlement. Furthermore, if willfulness cannot be proven, it is unlikely that the Classes here could be certified. This outcome would also eliminate the classwide relief provided in the Settlement, which could spawn thousands of identical lawsuits seeking small, if they are even provable at all, amounts of damages.

27.     The value of the Settlement is underscored by the ease with which Class Members will receive their share of the Settlement. This case does not involve any claims process, meaning no action whatsoever by Class Members is required for them to receive their benefits. After the date on which the deadlines to file appeals runs, the Settlement Administrator will mail checks to those Class Members who have not excluded themselves at their most recent, verifiable address. There can be no simpler method by which to provide settlement benefits to Class Members, further supporting the conclusion that this is an excellent result for Class Members.

28.     The Settlement allows the Classes to recover a sum certain now, as opposed to costly and time-consuming litigation that is unlikely to provide a

EXHIBIT 1

EXHIBIT 1

recovery that is significantly better than the recovery in the proposed Settlement. Indeed, with the difficulties tied to the willfulness element of Plaintiff's claims, it is very likely that further litigation would result in the Classes receiving nothing at all on their claims.

29.    This Settlement falls within the bounds of fairness, reasonableness, and adequacy as the Eleventh Circuit has set forth that standard, and I view it as an excellent result for the Class.

## Counsel's Time and Expenses

30.    I am the partner at Caddell & Chapman that supervises its associates, paralegals, and litigation support personnel in connection with their work regarding this case. It is our Firm's practice, in this case and all our class-action litigation, to assign work with attention to the assignee's billing rate so that the case proceeds as efficiently and economically as possible. For example, projects are not assigned to partners where an associate can effectively perform the work so that lodestar is minimized.

31.    Caddell & Chapman has spent time on this litigation that could have been spent on other matters. At various times during the Litigation, the active prosecution of the claims has consumed billable time that could otherwise have

24

EXHIBIT 1

EXHIBIT 1

been spent on other fee-generating work. Aside from the limited amount of partner time devoted to the case, this case has also required work by associates and paralegals in my Firm.

32.     The time my Firm has spent on this case has been completely contingent on the outcome of the action. Caddell & Chapman has not been paid for any of the time spent on the action.

33.     In connection with the Litigation, the attorney and staff timekeepers at Caddell & Chapman have billed a total of 692.9 hours from inception to July 18, 2013, for a total lodestar of $343,972.50.

34.     The following is a summary listing each lawyer and legal assistant for which Caddell & Chapman is seeking compensation for legal services in connection with the Settlement, the hours each individual expended as of July 18, 2013, and the hourly rate at which compensation is sought for each individual:

| Individual | Hours | Hourly Rate | Total |
|---|---|---|---|
| Michael Caddell | 92.55 | $875 | $80,981.25 |
| Cynthia Chapman | 48.55 | 675 | 32,771.25 |
| John Scofield | .2 | 650 | 130 |
| Craig Marchiando | 526.8 | 425 | 223,890 |

EXHIBIT 1

EXHIBIT 1

| | | | |
|---|---|---|---|
| Kathy Kersh | 21.40 | 250 | 5,350 |
| Patsy Ladezma | 1.5 | 250 | 375 |
| Sylvia Vargas | .5 | 250 | 125 |
| John Dessalet | 1.4 | 250 | 350 |
| **TOTAL** | 692.9 | | $343,972.50 |

35.     Based upon my experience with other class action matters, I believe that the time expended by Caddell & Chapman in connection with this litigation, when compared to the result achieved for the Classes, is reasonable in amount and was necessary to ensure the successful monetary and non-monetary relief obtained on behalf of the Classes.

36.     Caddell & Chapman's customary rates, which were used for purposes of calculating lodestar here, are based on prevailing fees for national class-action work, and have been approved in other courts in similar cases (including within this District), such as *Jackson, et al. v. Metscheck, et al.*, No. 1:11-CV-2735 (N.D. Ga.) (Thrash, J.); *Harris, et al. v. U.S. Physical Therapy, Inc.*, No. 2:10-CV-1508 JCM (VCF) (D. Nev.); *Hardy v. Hartford*, No. 07-CV-024-TUC-DCB (D. Ariz.); *In re Hyundai & Kia Horsepower Litigation*, No. 02CC00287 (Super. Ct. of

EXHIBIT 1

EXHIBIT 1

Orange County, Cal.); *Nissan 350Z Cases*, Coordinated Proceeding No. 4421 (Super. Ct. of Orange County, Cal.); *Elihu, et al. v. Toshiba America Information Systems, Inc.*, No. BC328556 (Super. Ct. of Los Angeles County, Cal.); *Williams v. LexisNexis*, No. 3:06-cv-00241 (E.D. Va.); *In re TransUnion Corp. Privacy Litigation*, MDL No. 1350 (N.D. Ill.); *White v. Experian Info. Solutions, Inc.*, No. 05-CV-01073 (MLGx) (C.D. Cal.).

37.   In December 2012, after resolving a high profile and complicated *qui tam* action (*United States of America, ex. rel. Ivey Woodard v. DaVita Inc.*, Case No. 1:05-CV-00227-MAC-ZJH, United States District Court for the Eastern District of Texas), the Department of Justice approved attorneys' fees that were based on Caddell & Chapman's then-current rates. In *DaVita*, the Department of Justice approved the entire requested fee, which was based on the following rates: Michael Caddell $875; Cynthia Chapman $675; Craig Marchiando $425; Kathy Kersh $250; Patsy Ledezma $250; Sylvia Vargas $250.

38.   Caddell & Chapman sets its hourly rates according to prevailing market rates, and these rates are customary and within the range of hourly fees charged by attorneys and staff of our respective experience in class action litigation. *2007 Hourly Billing Rates, Texas Lawyer*, June 2007, available at:

EXHIBIT 1

EXHIBIT 1

http://www.law.com/jsp/tx/specials/salary2007.jsp (last visited May 5, 2008) (available on request). This survey explains that the average equity partner at a large Texas law firm billed at a rate of $492 in 2007. However, averages do not identify market segments for highly skilled work. Some premier litigators are now charging rates far in excess of those billed by attorneys at my firm. *See Nathan Koppel, Lawyers Gear Up Grand New Fees — Hourly Rates Increasingly Hit $1,000, Breaching a Level Once Seen as Taboo*, Wall St. Journal, Aug. 27, 2007, at B1 (available on request). Caddell & Chapman's history of substantial recoveries easily supports the fees requested in this matter.

39.     Caddell & Chapman devoted its nationally recognized expertise, resources, and personnel to this matter. Caddell & Chapman and its co-counsel also performed critical work in this matter, made the requisite judgment calls, maintained a professional relationship with opposing counsel and consummated the two Settlements.

40.     Counsel are requesting a fee an expense award of approximately 26% of the total value obtained for the Classes, separate from the service award for the Class Representative, an amount in line with the Eleventh Circuit's benchmark. Comparing the total request, $350,000, to Counsel's lodestar calculation

EXHIBIT 1

EXHIBIT 1

demonstrates that Plaintiff's requested fee award results in no multiplier or enhancement.

41.   As of July 18, 2013, Caddell & Chapman has expended a total of $9,154.31 in unreimbursed expenses that were necessarily incurred in connection with the prosecution of this litigation. The expenses include items typically associated with litigation—photocopies, faxes, telephone calls, legal research, and staff overtime.

42.   The foregoing expenses were incurred solely in connection with this Litigation and are reflected on Caddell & Chapman's books and records as maintained in the ordinary course of business. These books and records are prepared from invoices, receipts, expense vouchers, check records and other records, and are an accurate record of the expenses incurred in this case. The rates charged for all internal expenses incurred by my firm (e.g., photocopying) are the same irrespective of whether the case is billable or contingent. As a result, the rates charged are necessarily market-sensitive and market-competitive since they are subject to and controlled by an overriding "check" imposed by the Firm's cost-paying clients.

EXHIBIT 1

EXHIBIT 1

43.     Counsel for the three Firms acting as Plaintiffs' Counsel in this case coordinated their efforts to avoid the needless duplication of effort.

44.     Plaintiff's Counsel negotiated fees in an attempt to approximate their lodestar so that the request would be near the time they accumulated on the case.

45.     The attorneys' fees are expressly provided for in the Parties' Settlement Agreement and Defendants do not contest the award requested by Class Counsel.

46.     Plaintiffs' Counsel is not aware of any Class Member objecting to any aspect of the Settlement.

47.     The fee and expense request was also disclosed to Class Members in the Notices regarding the settlement sent on May 21, 2013.

I declare under penalty of perjury, under the laws of the United States, that the foregoing is true and correct.

DATED:  July 18, 2013, Houston, Texas.


    /s/ Michael A. Caddell
Michael A. Caddell

EXHIBIT 1

EXHIBIT 1

## <u>CERTIFICATE OF COMPLIANCE</u>

The foregoing document complies with the typeface requirements of Local Rule 5.1C and the type style requirements of Local Rule 5.1C(3) using Times New Roman 14 point font.

/s/  Michael A. Caddell
Michael A. Caddell (*pro hac vice*)
Cynthia B. Chapman (*pro hac vice*)
Craig C. Marchiando (*pro hac vice*)
**CADDELL & CHAPMAN**
1331 Lamar, Suite 1070
Houston TX 77010
(713) 751-0400
(713) 751-0906 (fax)

***Counsel for Plaintiff***

31

EXHIBIT 1